OPINION
{¶ 1} Defendants-appellants, GS Metal Consultants, Inc. and GS Transport, Inc. (collectively, "appellants"), appeal from the judgments of the Franklin County Court of Common Pleas granting partial summary judgment in favor of plaintiff-appellee, Star Leasing Company ("Star Leasing"), and holding appellants in contempt of court. For the following reasons, we affirm. *Page 2 
 {¶ 2} Star Leasing is engaged in the business of leasing, renting, selling, maintaining, and repairing over-the-road van trailers. Star Leasing documents a trailer lease for a term of at least one year with a master Trailer Lease and Service Agreement, which includes at least one Schedule A, identifying the lease term, rate, number of trailers, and other terms applicable only to that Schedule A. When Star Leasing rents a trailer for a term of less than one year, it documents the transaction with an Equipment Interchange Agreement ("EIA"), which serves as a rental agreement for the identified trailer. The back of each EIA contains Conditions of Agreement that govern the rental. Star Leasing also utilizes an EIA when a customer leases a trailer pursuant to a Trailer Lease and Service Agreement and corresponding Schedule A. In that circumstance, Star Leasing requires the lessee to sign an EIA to acknowledge delivery of each trailer.
 {¶ 3} Appellants rented trailers from Star Leasing as early as October 16, 2000, but the parties did not enter into a Trailer Lease and Service Agreement (the "Lease") until September 28, 2001. The Lease included a single Schedule A detailing the lease of 20 trailers for a period of 36 months. Neither the Lease nor the Schedule A gave appellants an option to purchase the 20 trailers. On April 1, 2002, appellants executed a second Schedule A detailing the lease of 11 trailers for a period of 24 months and granting appellants the option to purchase those trailers for $1 each at the conclusion of the lease term. Also, in or around April 2002, appellants executed a third Schedule A detailing the lease of 40 trailers for a period of 36 months and granting appellants the option to purchase those trailers for $1 each at the conclusion of the lease term. Appellants ultimately purchased the 51 trailers that were the subjects of the second and *Page 3 
third Schedules A, and Star Leasing transferred the corresponding titles to appellants on August 19, 2005. Scott Galley ("Galley"), CEO of GS Metal Consultants, Inc., agreed that the Schedules A executed in April 2002 related exclusively to the 51 trailers collectively identified in those schedules.
 {¶ 4} Although Star Leasing proposed several additional Schedules A to appellants between March 2002 and September 2003, the parties executed no further Schedules A or written agreements. Up until May 2004, however, appellants continued to rent additional trailers from Star Leasing, above and beyond those identified in the three executed Schedules A. Those additional trailers include the 54 trailers that are the subject of this lawsuit. The 54 trailers were delivered to and accepted by authorized agents of appellants, as evidenced by 54 separate EIAs, between July 25, 2001, and May 29, 2004. The EIAs require monthly rental payments, but neither specify a definite rental term nor contain an option to purchase the identified trailers. In the space provided for a "minimum period" on the 54 EIAs, 29 state "2 DAYS," 9 state "MONTHLY," and 16 are blank. As of August 1, 2005, appellants discontinued payments for the 54 trailers.
 {¶ 5} On January 11, 2006, Star Leasing gave written notice declaring appellants in default and demanding return of the trailers by January 18, 2006. Appellants refused to return the trailers, maintaining that they were not in default of their obligations under the parties' agreements and that they were entitled to exercise an option to purchase the trailers.
 {¶ 6} Star Leasing initiated this action by filing a complaint against appellants on July 10, 2006, alleging seven causes of action, including claims for declaratory *Page 4 
judgment, breach of various contracts, replevin, and conversion. On September 7, 2007, with the consent of appellants, Star Leasing filed an amended complaint adding an eighth cause of action, for injunctive relief. In its eighth cause of action, Star Leasing requested an order requiring appellants to return the 54 trailers to Star Leasing or, alternatively, for an order restraining appellants from further use of the trailers. Appellants filed answers to Star Leasing's original and amended complaints on May 29, 2007, and October 22, 2007, respectively.
 {¶ 7} On September 7, 2007, Star Leasing filed a motion for partial summary judgment. Specifically, Star Leasing moved for summary judgment on its first cause of action, for a declaratory judgment that appellants do not have an option to purchase the 54 trailers, and on its eighth cause of action, for an order requiring appellants to return the trailers. On the same date, appellants also filed a motion for summary judgment, arguing that they did not breach the parties' agreements, they owed no money to Star Leasing, they have an option to purchase the 54 trailers, and they are entitled to retain possession of the trailers.
 {¶ 8} On March 20, 2008, the trial court granted Star Leasing's motion for partial summary judgment and denied appellants' motion for summary judgment. The trial court concluded that Star Leasing is the owner of the 54 trailers, that appellants do not have an option to purchase the trailers, that appellants are in default based on their failure to pay rent since August 1, 2005, and that Star Leasing is entitled to the immediate return of the trailers. The trial court rejected appellants' arguments that the parties' course of conduct supports a finding in favor of appellants and that the Ohio statute of frauds for leases bars Star Leasing's claim for possession. The trial court *Page 5 
therefore ordered appellants to return the trailers to Star Leasing "FORTHWITH." On April 29, 2008, upon a motion for reconsideration filed by appellants, the trial court modified its prior decision and entry and ordered appellants to return the trailers by May 19, 2008.
 {¶ 9} On May 29, 2008, Star Leasing filed a motion for an order of contempt based on appellants' failure to return the trailers as ordered. After a hearing, a magistrate issued a decision on July 3, 2008, finding appellants in contempt of court. Although appellants filed objections to the magistrate's decision, the trial court issued an order of contempt on July 24, 2008. The trial court imposed a fine of $250,000 plus $100 per trailer per day until the last trailer is returned to Star Leasing if appellants did not return the trailers within five days and ordered appellants to pay Star Leasing's attorney fees in the amount of $5,160. The court permitted appellants to purge their contempt by delivering the remaining trailers to Star Leasing within five days. Appellants have not returned all of the trailers or paid the court-ordered fine or attorney fees.
 {¶ 10} On August 19, 2008, appellants filed a notice of appeal, asserting the following assignments of error:
 Assignment of Error No. 1
 The trial court erred by finding [appellants] in contempt of court.
 Assignment of Error No. 2
 The trial court erred by granting summary judgment when issues of fact remain to be determined concerning whether the parties agreed to a purchase option in connection with a lease of trailers. *Page 6 
 {¶ 11} We first address appellants' second assignment of error, by which they contend that the trial court erred by granting Star Leasing's motion for partial summary judgment. Appellants maintain that questions of fact concerning whether the parties agreed that appellants would have an option to purchase the 54 trailers preclude summary judgment.
 {¶ 12} We review a summary judgment de novo. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; Brown at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. Coventry Twp.v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 13} Pursuant to Civ. R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds *Page 7 
can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
 {¶ 14} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt, 75 Ohio St.3d 280, 292,1996-Ohio-107. Once the moving party meets its initial burden, the non-movant must set forth specific facts demonstrating a genuine issue for trial. Id. at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 358-59, 1992-Ohio-95, quotingNorris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 15} The trial court based its decision granting Star Leasing's motion for partial summary judgment primarily on the express language of the Lease and EIAs executed by the parties. We begin our review with the language of those agreements. The construction of a written contract is a matter of law. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus. The court's primary objective in construing a contract is to ascertain and give effect to the parties' intent, which is presumed to reside in the contractual language used.Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.,168 Ohio App.3d 592, 2006-Ohio-4779, ¶ 20. When contract terms are clear and unambiguous, a court may not create a new contract by finding an intent not expressed in the clear contractual language. Alexander, at 246. *Page 8 
 {¶ 16} The Lease's introductory paragraph provides, in pertinent part, as follows:
 STAR LEASING CO. ("Lessor") * * * leases to GS Metal Consultants, Inc. ("Customer") * * *, upon the following terms and conditions, those trailers described in each executed Schedule "A" from time to time attached to and made part of this Trailer Lease and Service Agreement ("Agreement", which term shall include all Schedules and Exhibits hereto) and interim, substitute, and extra trailers as provided under this Agreement (all collectively referred to as "trailer(s)" unless otherwise stated).
Paragraph 20 states, in part, as follows:
 This Agreement is a lease only and Customer acquires no title or ownership rights to any trailer. * * * This Agreement and the Schedules which are executed now or at any later date make up the entire agreement between the parties; there are no oral agreements affecting this Agreement, and this Agreement supersedes any prior agreements between the parties as to the equipment being leased. All Schedules executed now or at a later date are part of this Agreement and are incorporated by reference. This Agreement may be modified only in writing signed by duly authorized representatives of both parties.
The Lease addresses the provision of "extra trailers," in part, as follows:
 Upon Customer's request and if Customer financially qualifies, Lessor will provide extra trailers as available from Lessor's rental fleet. All extra trailers so supplied shall be subject to all terms and conditions of this Agreement, except that the charges to Customer for such trailers will be at Lessor's current listed short term rental rate.
 {¶ 17} The Conditions of Agreement stated on each EIA include the following:
 This transaction is a rental agreement and not a sale. The parties understand and agree that Lessee does not acquire hereunder, by payment of said rental, any right, title, or interest in or to said equipment, except the right to possess and use said equipment, provided Lessee shall not be in default in performance hereunder.
 * * * *Page 9 
 This instrument contains the entire agreement between the parties pertaining to the subject matter thereof. No agreement, representations, or understanding not specifically contained herein shall be binding upon any of the parties hereto unless reduced to writing and signed by the parties to be bound thereby. The terms, covenants, and conditions, and other provisions of this Agreement may hereafter be changed, amended, or modified only by an instrument in writing specifically purporting so to do and signed by the parties to be bound thereby.
The EIAs also provide that, if the parties execute a separate Trailer Lease and Service Agreement in connection with the identified trailer, the terms of the Trailer Lease and Service Agreement supersede the EIAs' Conditions of Agreement.
 {¶ 18} It is undisputed that the 54 trailers at issue here were not covered by any of the three executed Schedules A that became part of the Lease pursuant to paragraph 20. The trial court concluded, however, that 48 of the 54 trailers, which were rented after the parties' execution of the Lease, were subject to the terms and conditions of the Lease. We agree, based on the Lease provision, that all extra trailers shall be subject to the terms and conditions of the Lease. The trial court further concluded that the remaining 6 trailers, rented prior to the parties' execution of the Lease, were governed by the terms of the EIAs signed upon acceptance of those trailers. Again, based on the terms of the parties' written contracts, we agree.
 {¶ 19} The premise of appellants' argument is a supposed agreement that they had an option to purchase the 54 trailers. The trial court rejected that premise. Finding that the parties' contracts were unambiguous and that the parties' course of conduct could not be used to contradict the contractual language, the trial court concluded that any option to purchase would have to be in writing and that no such writing existed. Moreover, the court concluded that Star Leasing, as the titled owner of 53 of the 54 *Page 10 
trailers, was entitled to possession of the trailers. Appellants' arguments on appeal essentially stem from contentions that (1) the trial court incorrectly conflated ownership rights with an option to purchase, and (2) the trial court erred in failing to find, at least, a genuine issue of material fact as to whether appellants had an option to purchase the 54 trailers.
 {¶ 20} Appellants' contention that the court erred by conflating ownership rights with an option to purchase stems from the court's discussion of R.C. 4505.04(A), which provides as follows:
 No person acquiring a motor vehicle from its owner * * * shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle, or there is delivered to the person a manufacturer's or importer's certificate for it, or a certificate of title to it is assigned as authorized by section 4505.032 of the Revised Code; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration.
While we agree with appellants that R.C. 4505.04(A) is irrelevant to their claim of a contractual right to purchase the trailers, the trial court's decision does not reflect a contrary position. Rather, the trial court simply concluded that Star Leasing remains the owner of those trailers for which it possesses certificates of title and that appellants "have never acquired any right, title, claim, or interest in or to those * * * trailers." The trial court did not hold that R.C. 4505.04(A) prevents a finding that appellants are contractually entitled to purchase the trailers from Star Leasing; rather, it based that conclusion on the language of the parties' agreements, as discussed below.
 {¶ 21} Appellants next contend that the trial court erred in failing to find a genuine issue of material fact as to whether they had an option to purchase the 54 trailers based *Page 11 
on an agreement reached by the parties subsequent to the execution of the Lease. While Star Leasing concedes that neither the Lease nor the EIAs preclude a separate agreement for an option to purchase, it maintains that such an agreement would be enforceable only if reduced to writing and signed by the parties.
 {¶ 22} There is no signed writing that grants appellants an option to purchase the 54 trailers. Although, at oral argument, appellants referred to the April 2002 Schedules A as a potential basis for an option to purchase the 54 trailers, Galley admitted in his deposition that those Schedules A applied only to the identified 51 trailers and, by extension, did not apply to the 54 trailers at issue here. Similarly, Jeff Rosen, Star Leasing's Vice President and C.F.O., stated in his affidavit that each Schedule A identifies the term, rate, number of trailers, and terms and specifications applicable only to that Schedule A. Thus, the April 2002 Schedules A are inapplicable to the trailers at issue here.
 {¶ 23} Although the parties engaged in negotiations to execute Schedules A in addition to the three executed in and prior to April 2002, and each of the proposed Schedules A contained an option to purchase, the parties did not execute any additional written agreements. While Galley admitted that appellants rejected most of the proposed schedules, appellants argue that they agreed to terms proposed by Star Leasing in a single, undated Schedule A identified as Exhibit T in Galley's deposition. That proposed Schedule A provided for the lease of 36 trailers for a 36-month term and included an option to purchase the trailers for $1 each at the conclusion of the lease term. Despite the facts that neither Star Leasing nor appellants signed the proposed Schedule A and that the proposed Schedule A refers to only 36 trailers, appellants *Page 12 
maintains that it provides the basis for an option to purchase the 54 trailers. The unexecuted Schedule A does not constitute a writing signed by both parties, however, as required to modify the Lease or the EIAs.
 {¶ 24} In an attempt to distinguish a subsequent agreement for an option to purchase from a modification of the Lease, appellants argue that an agreement granting an option to purchase is not inconsistent with a lease for a definite term. Ohio courts have recognized that an agreement granting a lessee an option to purchase property already the subject of a lease constitutes a modification of the lease. SeeKool, Mann, Coffey Co. v. Castellini Co. (Aug. 2, 1995), 1st Dist. No. C-930951 (the parties "modified the lease to give [the defendant] the option to purchase * * * upon the expiration of the lease term");Mangano v. Dawson (June 13, 1995), 7th Dist. No. 93-C-72 (amendment "modified the original lease" by extending an option to purchase). Here, each of the trailers was subject either to the terms of the Lease or the Conditions of Agreement in the EIA relating to the trailer. Both the Lease and the EIAs provide that the parties' transaction is a "lease only" or a "rental agreement," and both provide for the return of the trailers to Star Leasing upon termination of the agreement. The Lease requires the return of each trailer to Star Leasing upon expiration or termination of the Lease as to each particular trailer, and each EIA provides that, any time after a minimum rental period, Star Leasing may request the return of the trailer upon seven days written notice. The Lease states that "there are no oral agreements affecting [it]" and the EIA Conditions of Agreement provide that the EIA "contains the entire agreement between the parties pertaining to the subject matter thereof." Any subsequent grant of an option to purchase, altering the parties' rights and obligations *Page 13 
upon termination of the rental or lease term, would necessarily constitute a modification of the Lease and/or the EIA related to the particular trailer.
 {¶ 25} This court has noted the disfavor that courts have traditionally afforded no-oral-modification clauses in written contracts and the resulting principle that a no-oral-modification clause can be waived by oral agreement like any other term in a contract. Fahlgren Swink, Inc. v. Impact Resources, Inc. (Dec. 24, 1992), 10th Dist. No. 92AP-303. A no-oral-modification clause may be held to have been waived by the parties when modifications "have been made with knowledge and participation of all concerned, the evidence of which is clear and convincing, no fraud being shown." Fraher Transit, Inc. v. Aldi,Inc., 9th Dist. No. 24133, 2009-Ohio-336, ¶ 14, citing Frantz v.Van Gunten (1987), 36 Ohio App.3d 96, 99. Absent evidence of waiver, however, Ohio courts generally enforce contractual requirements that modifications to the contract be made in writing. See Reckart v.Lyons (Aug. 13, 1993), 11th Dist. No. 92-L-180 (whether there was an oral modification to a lease/option agreement was immaterial where the lease/option agreement provided that any modification was to be in writing); Rosepark Properties, Ltd. v. Buess, 167 Ohio App.3d 366,2006-Ohio-3109, ¶ 38; Fultz Thatcher v. Burrows Group Corp., 12th Dist. No. CA2005-11-126, 2006-Ohio-7041; Sun Design Sys., Inc. v.Tirey (Apr. 19, 1996), 2d Dist. No. 95-CA-46; Flick v. CenturyInvestments, Inc. (Mar. 21, 1984), 1st Dist. No. C-830477.
 {¶ 26} Here, we find no evidence giving rise to a genuine issue of material fact as to whether appellants and Star Leasing agreed to waive the no-oral-modification clauses in the Lease and EIAs. As a general principle, a contract cannot be modified unilaterally; rather, the parties must mutually consent to the modification. Hanna v. *Page 14 Groom, 10th Dist. No. 07AP-502, 2008-Ohio-765, ¶ 27, citing NagleHeating Air Conditioning Co. v. Heskett (1990), 66 Ohio App.3d 547,550. Thus, "[a] party to an existing contract may modify that contract only with the assent of the other party to the contract." Hanly v.Riverside Methodist Hosps. (1991), 78 Ohio App.3d 73, 79, citingFrengel v. Ports Petroleum Co., Inc. (Sept. 11, 1987), 11th Dist. No. 3790.
 {¶ 27} Galley testified that he and Jeff Egle, Star Leasing's representative, agreed to the terms set forth in Exhibit T, a proposed Schedule A, but that Egle "didn't get up here to get it signed." (Galley Depo. 57.) He testified that, despite several attempts to sign the proposed schedule, "we just didn't get it done but we had an agreement." (Galley Depo. 57.) Galley's deposition contains the following testimony regarding the absence of signatures on the proposed Schedule A:
 Q. And did you ever sign this Schedule A?
 A. I believe that I — excuse me. Exhibit T, I did not sign.
 Q. And why did you not sign it?
 A. Because the first attempt at signing it, I had — I was out of town and Jeff had come up and we could not sign it. The next two times that he was supposed to come up and sign, Jeff could not make it.
 Q. Why did you not sign it?
 A. I was out of town at that time.
 Q. How would you not be able to sign a document at some later time if you accepted it?
 A. Because he was bringing it up.
 * * *
 Q. Why didn't you sign it? *Page 15 
 A. Because Jeff Egle was coming up for us to sign them together and take care of everything together.
 Q. But it didn't prevent you from signing it, correct?
 A. It did not.
 Q. There is no signed version of this Schedule A?
 A. Not that I'm aware of, no.
(Galley Depo. 112-14.) From the evidence in the record, a reasonable fact finder could not conclude that both appellants and Star Leasing assented to a waiver of the no-oral-modification clause. To the contrary, Galley's testimony and the parties' actions suggest an understanding of the need for a signed agreement, given the parties' repeated attempts to sign the proposed Schedule A. Furthermore, the series of proposed Schedules A that Star Leasing produced over the course of two years suggests Star Leasing's continued adherence to the no-oral-modification clause. Accordingly, we find no evidence creating a genuine issue of material fact regarding waiver of the no-oral-modification clauses in the Lease and EIAs and find no error in the trial court's conclusion that any agreement giving appellants an option to purchase the 54 trailers must be in writing.
 {¶ 28} Appellants also argue that the course of conduct between appellants and Star Leasing, including the purchase options contained in the April 2002 Schedules A, creates a genuine issue of material fact as to whether the 54 trailers are subject to an option to purchase. A court may look to the parties' course of conduct as evidence of their construction of a contract when the contract language is unclear.Mentor Indus. Complex Ltd. Partnership v. N. Coast Wood Prods.,Inc. (July 20, 2001), 11th Dist. No. 2000-L-116. Where the contract language is clear and unambiguous, however, courts *Page 16 
may not create a new contract by finding an intent not expressed by the contractual language. Shifrin v. Forest City Ent., Inc.,64 Ohio St.3d 635, 638, 1992-Ohio-28, citing Alexander, at 246. Here, where the April 2002 options to purchase do not extend to the trailers at issue, and given the unambiguous language of the Lease and EIAs, including the requirement that any modification be in writing and signed by the parties, we find no error in the trial court's rejection of appellants' course of conduct argument.
 {¶ 29} In their appellate brief, appellants contend that the trial court's analysis constituted a flawed application of the parol evidence rule. The parol evidence rule is a substantive rule of law by which, "`absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" Galmish v. Cicchini, 90 Ohio St.3d 22,27, 2000-Ohio-7, quoting 11 Williston on Contracts (4th Ed. 1999) 569-70, Section 33:4. "The rule `operates to prevent a party from introducing extrinsic evidence of negotiations that occurred before or while the agreement was being reduced to its final written form.'" Bellman v. Am.Internatl. Group, 113 Ohio St.3d 323, 2007-Ohio-2071, ¶ 7, quoting Black's Law Dictionary (8th Ed. 2004). The presence of an integration clause in a written contract creates a strong, although not conclusive, presumption that the contract is complete. See Fontbank, Inc. v.CompuServe, Inc. (2000), 138 Ohio App.3d 801, 808. The parol evidence rule does not apply to evidence of subsequent modifications of a written agreement or to waiver of an agreement's terms by language or conduct.Tri State Asphalt Corp. v. Ohio Dept. of Transp. (Apr. 11, 1995), 10th Dist. No. 94API07-986, citing Norris v. Royal Indemn. Co. (1984),20 Ohio App.3d 206, 208. *Page 17 
 {¶ 30} Appellants argue that the trial court failed to fully consider whether the parties intended the Lease to be a final, written integration of their agreement, despite the presence of integration clauses in the Lease and each of the EIAs. They also maintain that, even if applicable, the parol evidence rule would not preclude evidence of the parties' negotiations or agreements subsequent to the execution of the Lease. Ultimately, appellants maintain that, without violating the parol evidence rule, the parties could have made a separate, subsequent agreement for a purchase option, and a jury must decide that issue.
 {¶ 31} Appellants' arguments regarding the applicability of the parol evidence rule are misplaced because it does not appear from the trial court's decision and entry that the court relied on the parol evidence rule in granting Star Leasing's motion for partial summary judgment. In fact, the trial court's March 8, 2008 decision and entry does not contain a single mention of the parol evidence rule. Indeed, the parol evidence rule, which precludes only evidence of prior or contemporaneous representations, negotiations, and agreements, would be inapplicable to evidence supporting appellants' position that the parties agreed to a purchase option after executing the Lease. The trial court based its conclusion, not on application of the parol evidence rule, but on the express language of the parties' agreements, including not only the integration clauses in the Lease and EIAs, but on the provisions requiring that any modifications be in writing and signed by the parties. The trial court did not disregard evidence of the parties' subsequent negotiations based on the parol evidence rule, but on the basis that those negotiations did not culminate in written agreements as expressly required to modify the parties' rights and obligations. Because the trial court did not expressly rely *Page 18 
on the parol evidence rule in construing the parties' written agreements, appellants' contention that the trial court improperly applied that rule is misplaced. See Hanlin-Rainaldi Constr. Corp. v.Jeepers, Inc., 10th Dist. No. 03AP-851, 2004-Ohio-6250, ¶ 30.
 {¶ 32} As a final matter with respect to appellants' second assignment of error, we note that, in granting Star Leasing's motion for partial summary judgment, the trial court discussed the Ohio statute of frauds for leases, R.C. 1310.08, which appellants asserted as a defense to enforcement of the EIAs. R.C. 1310.08(A) provides as follows:
 (A) A lease contract is not enforceable by way of action or defense unless one of the following applies:
 (1) The total payments to be made under the lease contract, excluding payments for options to renew or buy, are less than one thousand dollars;
 (2) There is a writing, signed by the party against whom enforcement is sought or by that party's authorized agent, sufficient to indicate that a lease contract has been made between the parties and to describe the goods leased and the lease term.
Appellants argued that the EIAs relating to the 54 trailers satisfied neither requirement of R.C. 1310.08(A). The trial court rejected appellants' argument and concluded that, even if the EIAs did not satisfy R.C. 1310.08(A), they were enforceable under R.C. 1310.08(D)(3), which provides for the enforcement of a lease with respect to goods received and accepted by the lessee even where R.C. 1310.08(A) is not satisfied. On appeal, appellants now maintain that the trial court's determination, while possibly correct, is irrelevant to whether appellants have an option to purchase the 54 trailers. Thus, by appellants' own acknowledgment, we conclude that the statute of frauds is irrelevant to the issues before us. *Page 19 
 {¶ 33} In conclusion, the trial court correctly found that there was no writing, signed by any party, to support appellants' contention that they had an option to purchase the 54 trailers and that, "pursuant to the express terms of the contract documents between Star [Leasing] and [appellants], [appellants] did not acquire an option to purchase any of the 54 trailers that are the subject of this action." Whether, as appellants contend, Star Leasing and appellants intended to form a later agreement allowing an option to purchase, the parties' contracts required such an agreement to be in writing, and, despite the parties' negotiations, no written agreement was executed. Accordingly, we discern no error in the trial court's entry of partial summary judgment in favor of Star Leasing, and we overrule appellants' second assignment of error.
 {¶ 34} We turn now to the first assignment of error, by which appellants assert that the trial court erred by holding them in contempt of court for their failure to obey the March 20, 2008 and April 29, 2008 orders to return the trailers. On appeal from a trial court's finding of civil contempt, an abuse of discretion standard applies to the trial court's discretionary and factual determinations. Williamson v.Cooke, 10th Dist. No. 05AP-936, 2007-Ohio-493, ¶ 11. An appellate court reviews questions of law de novo, however, even in the context of contempt. Benjamin v. Credit Gen. Ins. Co., 10th Dist. No. 04AP-642,2005-Ohio-1450, ¶ 17.
 {¶ 35} By ordering appellants to return the trailers and by holding appellants in contempt for their failure to do so, appellants maintain that the trial court erroneously permitted execution of judgment on an interlocutory order. Star Leasing does not dispute that interlocutory orders are, generally, not subject to execution. See Towner v.Wells (1837), 8 Ohio 136, 141; Wheeler v. Ohio State Univ. Med.Ctr, 4th Dist. *Page 20 
No. 03CA2922, 2004-Ohio-2769, ¶ 19; Profancik v. Short's Athletic Club,Inc. (Dec. 16, 1998), 9th Dist. No. 2744-M; Nwabara v. Willacy (Apr. 17, 1997), 8th Dist. No. 71122. Star Leasing does, however, dispute appellants' assertion that the trial court's order to return the trailers constituted an execution of judgment.
 {¶ 36} The trial court granted Star Leasing's motion for partial summary judgment on its first and eighth causes of action. Because Star Leasing's first cause of action requested only declaratory relief, we are concerned with Star Leasing's eighth cause of action here. The heading of Star Leasing's eighth cause of action is "Injunctive Relief," and, in that cause of action, Star Leasing requests an order for the return of the trailers, pursuant to R.C. 1310.71, which provides, in part, as follows:
 (B) After a default of the type described in division (A) or (C)(1) of section 1310.69 of the Revised Code by the lessee under the lease contract or, if agreed, after other default by the lessee, the lessor has the right to take possession of the goods. If the lease contract so provides, the lessor may require the lessee to assemble the goods and make them available to the lessor at a place to be designated by the lessor that is reasonably convenient to both parties.
 (C) The lessor may proceed under division (B) of this section without judicial process if it can be done without breach of the peace, or the lessor may proceed by action.
Star Leasing contends that, although the statutory remedy of replevin was unavailable in this case because the trailers were located in Indiana, [1] it was entitled to injunctive relief requiring appellants to return the trailers. See R.C. 2737.20 (providing that, in lieu of replevin under that chapter, a court may grant injunctive relief). Thus, Star Leasing *Page 21 
argues that the trial court simply granted the injunctive relief it sought and that the court did not order return of the trailers as an execution of judgment.
 {¶ 37} In support of their argument that the trial court's order constitutes an improper execution, appellants point to the magistrate's July 3, 2008 decision and, specifically, to the magistrate's discussion of whether Galley, as a corporate officer of appellants, could be held in contempt under principles of procedural due process. The magistrate simply stated that the language of Star Leasing's eighth cause of action was not clear enough to give Galley notice that the trial court's May 20, 2008 decision and entry granted a permanent injunction. Based on that statement, appellants now argue that the trial court did not grant injunctive relief when it entered summary judgment on Star Leasing's eighth cause of action. We disagree. First, the magistrate expressly limited his findings to the questions of whether Galley was required to appear at the contempt hearing and whether he could be held in contempt. Moreover, contrary to appellants' assertion, the trial court did not expressly adopt the magistrate's decision or the reasoning expressed therein in its order granting Star Leasing's motion for contempt. Ultimately, regardless of whether the trial court's order to return the trailers constituted a permanent injunction or an order pursuant to R.C. 1310.71, it simply granted the relief requested in Star Leasing's eighth cause of action and does not constitute an execution of judgment.
 {¶ 38} Appellants also argue that the trial court's order to return the trailers to Star Leasing violated appellants' right to due process because the court did not require Star Leasing to post a bond. In making that argument, appellants liken the trial court's order to a prejudgment attachment and cite Peebles v. Clement (1980), *Page 22 63 Ohio St.2d 314. In Peebles, at 322, the Supreme Court of Ohio held that the prejudgment attachment procedure, as provided by R.C. Chapter 2715, failed to give a defendant sufficient due process guarantees under the United States and Ohio Constitutions because it did not provide for judicial supervision of the procedure. As relevant to appellants' argument here, the court also held that statutes providing for prejudgment attachment must require the plaintiff to furnish an appropriate bond or other security to compensate the defendant in the event that seizure was wrongful. Id. at 321.
 {¶ 39} This case, however, does not involve prejudgment attachment. A prejudgment or provisional attachment involves the seizure of a defendant's property so that if the plaintiff ultimately prevails on his claim, he will be assured of recovering on the judgment through sale of the seized property. See Black's Law Dictionary (7th Ed. 1999). Under R.C. 2715.01(A), prejudgment attachment is available only "in a civil action for the recovery of money." While Star Leasing has requested a monetary recovery on its various breach of contract claims, its motion for partial summary judgment involved only Star Leasing's claims for declaratory and injunctive relief and not claims for the recovery of money.
 {¶ 40} We conclude that the trial court's entry of partial summary judgment in favor of Star Leasing on its claim for injunctive relief did not trigger a requirement of a bond, as required for a prejudgment attachment. Unlike a prejudgment attachment, which a court issues before the plaintiff proves his case, the trial court issued its order that appellants turn over the disputed trailers only after giving both sides a full opportunity to present their cases on summary judgment, determining the merits of Star Leasing's claim of entitlement to those trailers, and rejecting appellants' claim of *Page 23 
entitlement. Unlike a prejudgment attachment, which protects a plaintiff's ability to collect on a monetary judgment, the order to return the trailers was the judgment itself. Additionally, if the trial court's order constituted a permanent injunction, no bond was required. See Ensley v. City of Dayton (Aug. 16, 1995), 2d Dist. No. 14487 (noting that the Civ. R. 65 requirement for a bond applies only to temporary restraining orders and preliminary injunctions, not to permanent injunctions). Therefore, we conclude that the absence of a requirement that Star Leasing post a bond in relation to the ordered return of its trailers does not constitute a violation of appellants' guarantees of due process under the United States or Ohio Constitutions. Accordingly, we overrule appellants' first assignment of error.
 {¶ 41} Having overruled both of appellants' assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas and remand this matter for determination of all remaining claims.
Judgment affirmed and cause remanded.
McGRATH and TYACK, JJ., concur.
[1] R.C. 2737.16, which provides for an order of possession in replevin, states that the order "may be directed to the levying officer of any county within this state." (Emphasis added.) *Page 1