[Cite as *Ohio Valley Mall Co. v. Dreamz Come True, L.L.C.*, 2025-Ohio-888.]

# IN THE COURT OF APPEALS OF OHIO
# ELEVENTH APPELLATE DISTRICT
# TRUMBULL COUNTY

| | |
|---|---|
| OHIO VALLEY MALL COMPANY, | CASE NO. 2024-T-0071 |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| DREAMZ COME TRUE, LLC d.b.a. TOYS, TOYS N MORE, et al., | Trial Court No. 2023 CV 00047 |
| Defendants-Appellants. | |

## O P I N I O N

Decided: March 17, 2025
Judgment: Reversed and remanded

*Anthony J. Colucci*, *Katherine M. Mangapora*, and *Michael J. Wright*, 5577 Youngstown-Warren Road, Niles, OH 44446 (For Plaintiff-Appellee).

*David S. Nichol* and *Daniel H. Hovatter*, Roderick Linton Belfance, LLP, 50 South Main Street, 10th Floor, Akron, OH 44308 (For Defendants-Appellants).

JOHN J. EKLUND, J.

{¶1} Appellants, Dreamz Come True, LLC ("Dreamz") d.b.a. Toys, Toys N More, and Personalized Ornaments/Sunglasses and Ahmet Karaagac, appeal the judgment of the Trumbull County Court of Common Pleas granting summary judgment to Appellee, Ohio Valley Mall Company ("Ohio Valley"), on Ohio Valley's breach of contract claims.

{¶2} Appellants raise two assignments of error, arguing the trial court erred by finding that the parties' license agreements precluded Appellants' defenses for (1) equitable estoppel and (2) estoppel by laches.

{¶3} Having reviewed the record and the applicable law, we find:

**{¶4}** (1) Appellants' first assignment of error has merit. Appellants raised a genuine issue of material fact as to whether Ohio Valley waived the no-oral modification provisions in the parties' license agreements. In addition, Appellants raised a genuine issue of material fact as to whether Ohio Valley should be estopped from recovering certain charges pursuant to the license agreements.

**{¶5}** (2) Based on our disposition of Appellants' first assignment of error, their second assignment of error is moot.

**{¶6}** Therefore, we reverse the judgment of the Trumbull County Court of Common Pleas and remand for further proceedings.

### Substantive and Procedural History

**{¶7}** Ohio Valley is an Ohio limited partnership that operates the Ohio Valley Mall in St. Clairsville, Ohio. Dreamz is an Ohio limited liability company that licensed two kiosks and one in-line unit from Ohio Valley. Karaagac is Dreamz's president and owner.

**{¶8}** In late 2019, Dreamz began conducting business at the Ohio Valley Mall pursuant to the following agreements:

| Date | Agreement | Grantor | Licensee | Unit | Term |
|---|---|---|---|---|---|
| 10/18/19 | Kiosk License Agreement | Ohio Valley | Dreamz dba Toys | 9063T | 11/1/19 (or the date Licensee opens for business) to 1/15/21 |
| 10/16/19 | In-Line License Agreement | Ohio Valley | Dreamz dba Toys N More | 730 | 10/15/19 (or the date Licensee opens for business) to 1/14/21 |
| 10/18/19 | Kiosk License Agreement | Ohio Valley | Dreamz dba Personalized Ornaments/ Sunglasses | 9066T | 11/1/19 (or the date Licensee opens for business) to 1/15/21 |

2

Case No. 2024-T-0071

**{¶9}** On October 15, 2019, Karaagac executed a Guaranty of License Agreement pursuant to which he personally guaranteed Dreamz's obligations under the Toys N More license agreement.

**{¶10}** The license agreements were set to expire on January 14 and 15, 2021. In December 2020, Ohio Valley's leasing director, Andrew Kopper, approached Karaagac about renewing the license agreements for another term. According to Appellants, Kopper agreed to remove two charges from Dreamz's accounts. The first charge was for liquidated damages for Dreamz's failure to timely open the locations for Toys and Toys N More. The second charge was for April and May 2020 rent when the mall was closed due to COVID-19.

**{¶11}** In January 2021, Ohio Valley and Dreamz renewed the license agreements, as follows:

| Date | Agreement | Grantor | Licensee | Unit | Term |
|------|-----------|---------|----------|------|------|
| 1/8/21 | Kiosk License Agreement | Ohio Valley | Dreamz dba Toys | 9063T | 3/1/21 (or the date Licensee opens for business) to 1/31/22 |
| 1/7/21 | In-Line License Agreement | Ohio Valley | Dreamz dba Toys N More | 730 | 1/15/21 (or the date Licensee opens for business) to 1/31/22 |
| 1/8/21 | Kiosk License Agreement | Ohio Valley | Dreamz dba Personalized Ornaments/ Sunglasses | 9066T | 3/1/21 (or the date Licensee opens for business) to 1/31/22 |

**{¶12}** The initial and renewed license agreements all contain the following provision:

Grantor and Licensee acknowledge and understand that there have been prior negotiations and discussions between them regarding the terms of this License Agreement but that all prior negotiations and discussions are superseded by this License Agreement, including the Addendum and Exhibit A, which exclusively constitutes the complete and final agreement

3

of Grantor and Licensee and sets forth all the covenants, promises, agreements, conditions, inducements, representations and understandings concerning the Premises or the Shopping Center. Except as herein otherwise expressly provided, no subsequent alteration, amendment, change or addition to this License Agreement shall be legally binding upon Grantor or Licensee unless reduced to writing and signed by them.

{¶13} The renewed license agreements expired in early 2022. On November 17, 2022, Ohio Valley, through counsel, sent letters to Appellants notifying them they were in default of the three license agreements and demanded payment of unpaid charges.

{¶14} On January 12, 2023, Ohio Valley filed a Complaint for Money Only against Appellants in the Trumbull County Court of Common Pleas. In Counts One, Two, and Four, Ohio Valley alleged that Dreamz owed unpaid charges and interest pursuant to the three license agreements. In Count Three, Ohio Valley alleged that Karaagac was jointly and severally liable for the unpaid charges and interest that Dreamz owed under the Toys N More agreement.

{¶15} On February 15, 2023, Appellants filed an Answer.[1] On April 4, 2024, Ohio Valley filed a motion for summary judgment. Ohio Valley sought judgment against Dreamz (dba Toys and Personalized Ornaments/Sunglasses) for $14,632.39 plus interest at 18% per annum and against Dreamz (dba Toys N More) and Karaagac, jointly and severally, for $15,177.05 plus interest at 18% per annum.

{¶16} On April 29, 2024, Appellants filed a brief in opposition. Relevant here, Appellants argued that Ohio Valley's claims were barred by the doctrines of equitable estoppel and estoppel by laches because Appellants relied on Ohio Valley's oral

---

1. Appellants also filed a Counterclaim relating to their security deposit. The trial court subsequently granted summary judgment to Ohio Valley. Since Appellants do not raise any assignments of error regarding their Counterclaim, we will not discuss it.

4

Case No. 2024-T-0071

agreement to remove the charges for liquidated damages and April/May 2020 rent. In support, Appellants submitted an affidavit from Karaagac and text messages and email correspondence between Karaagac and Kopper.

{¶17} On May 10, 2024, Ohio Valley filed a reply. Relevant here, Ohio Valley argued that the no-oral modification provisions in the license agreements quoted above precluded Appellants' estoppel and laches defenses.

{¶18} On August 19, 2024, the trial court filed a judgment entry granting Ohio Valley's motion for summary judgment. The trial court rejected Appellants' estoppel and laches arguments because the parties had not entered into written, signed agreements that modified the license agreements.

{¶19} On September 11, 2024, Appellants timely appealed raising two assignments of error.

**Standard of Review**

{¶20} We review a trial court's decision granting summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Civ.R. 56 provides that summary judgment may be granted when (1) no genuine issues as to any material fact remain to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

Case No. 2024-T-0071

**Equitable Estoppel**

**{¶21}** Appellants' first assignment of error states: "The Trial Court committed prejudicial error in granting plaintiff-appellee's motion for summary judgment failing to find that promissory and/or equitable estoppel could not support a modification of the written license agreements due to the no-oral modification provisions."

**{¶22}** As stated, Appellants argued in opposition to summary judgment that Ohio Valley's claims were barred by the doctrine of equitable estoppel. Estoppel is a valid defense that may be asserted in a contract claim. *Ultimate Salon & Spa Inc. v. Legends Constr. Group*, 2019-Ohio-2506, ¶ 36 (11th Dist.). The Supreme Court of Ohio has held that "[e]quitable estoppel precludes recovery when 'one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment.'" *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 2006-Ohio-6553, ¶ 52, quoting *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 34 (1994). "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145 (1990). "The party raising the defense of equitable estoppel bears the burden of demonstrating its applicability." *Merriner v. Goddard*, 2009-Ohio-3253, ¶ 98 (7th Dist.).

**{¶23}** The trial court found that the no-oral modification provisions in the license agreements precluded Appellant's estoppel defense. In support, the trial court cited this Court's decision in *Time Warner Entertainment Co., L.P. v. Kleese-Beshara-Kleese*, 2009-Ohio-6712 (11th Dist.). However, the cited language in *Time Warner* involved

Case No. 2024-T-0071

general principles of contract construction, not the legal effect of a no-oral modification provision. *Id.* at ¶ 28. Therefore, *Time Warner* is not dispositive of the issue before us.

{¶24} In *Wells Fargo Bank, N.A. v. Smith*, 2012-Ohio-1672 (11th Dist.), this Court explained that "the purpose for including a 'no oral modification' clause in a contract is to protect a party against fraudulent or mistaken oral testimony regarding the alleged existence of an oral modification." *Id.* at ¶ 46. However, courts have acknowledged that "[i]f strictly enforced, a no-oral-modification clause would deny effect to every oral modification—even those that are fully voluntary, freely entered, and entirely consensual—simply because there was no writing." *Fields Excavating, Inc. v. McWane, Inc.*, 2009-Ohio-5925, ¶ 16 (12th Dist.). In addition, "a party could simply insert the clause into an agreement and would be magically protected in the future no matter what that party said or did." *Id.* at ¶ 17. "More simply, by including a no-oral modification clause in a contract, a party could orally induce the opposing party in any way and then hide behind the clause as a defense." *Id.* Therefore, courts have held that the clause itself can be waived by oral agreement like any other term in a contract. *Id.* at ¶ 19.

{¶25} In *Smith*, this Court held that "whenever it is claimed that a written contract was orally modified despite the presence of a 'no oral modification' clause, the party raising the issue is also implicitly asserting that the [no-oral modification] clause itself was orally waived." *Id.* at ¶ 35. "An oral waiver of a 'non-oral modification' clause is legally permissible when certain circumstances exist." *Id.* Specifically, "[a] party asserting the existence of an oral waiver of a 'no oral modification' clause cannot prevail absent evidence of a subsequent act of the 'opposing' party which treats the modification as operative." *Id.* at ¶ 45. "In other words, waiver of a 'no oral modification' clause cannot

7

be based solely upon the bald statement of the 'asserting' party that an oral waiver occurred and an oral modification of another contractual term was reached." *Id.* We reasoned that "[i]f a simple statement were enough to create a factual dispute on the matter, the [no-oral modification] clause . . . would be rendered meaningless." *Id.* at ¶ 46. "By requiring evidence as to subsequent acts of the 'opposing' party, a proper balance is reached between the enforcement of the basic purpose of the clause and the concern that a party could agree to both the oral waiver and modification, and then 'hide' behind the 'no oral modification' clause in order to avoid enforcement." *Id.*

{¶26} As an example, we cited *Frantz v. Van Gunten*, 36 Ohio App.3d 96 (3d Dist. 1987), which involved a provision in a construction contract requiring change orders to be reduced to writing and signed by the parties. *Smith* at ¶ 41. We explained that "[i]n *Frantz*, evidence of the subsequent acknowledgment of the oral modification was contained in the testimony of the 'opposing' parties when the homeowners admitted that they had requested the changes in question, and that they fully expected to pay for the changes." *Id.* at ¶ 43.

{¶27} Based on the foregoing authority, the no-oral modification provisions in the parties' license agreements did not bar Appellants' equitable estoppel defense as a matter of law. In addition, implicit in Appellants' argument was an assertion that the no-oral modification provisions were waived. Therefore, the first inquiry is whether Appellants raised a genuine issue of material fact that Ohio Valley waived the no-oral modification provisions, i.e., that Ohio Valley engaged in conduct subsequent to the alleged oral modification that treated the modification as operative. If so, the second inquiry is whether Appellants raised a genuine issue of material fact regarding their

8

equitable estoppel defense, i.e., that Ohio Valley induced Appellants to believe certain facts existed and that Appellants changed their position in reasonable, detrimental reliance on those facts.

{¶28} Upon review of the evidentiary record, we find that Appellants raised a genuine issue of material fact as to whether Ohio Valley waived the no-oral modification provisions. As stated, the parties entered into the initial license agreements in October 2019, which were set to expire on January 14 and 15, 2021. In opposition to summary judgment, Appellants submitted an affidavit from Karaagac, who averred in relevant part:

> When the initial lease terms were nearing an end, in December of 2020, I insisted that [Ohio Valley] confirm that these charges would be officially removed before any of the leases were renewed for another 13 months. I had been told numerous times that these charges were being removed and I just wanted to make sure this was clarified before I signed the new leases on behalf of [Dreamz] in January of 2021.

{¶29} Appellants attached several text messages between Karaagac and Kopper.[2] In a text message dated December 9, 2020 (the month before the initial license agreements were set to expire), Karaagac wrote:

> Hello Andrew,
> I got an email for the lease but it only has store lease. If you send me rest of the leases and the letter that states about April and May rents are forgiven and liquidation charges being erased and I am in good standing I will sign everything write the checks and include my insurances.
> Thanks

{¶30} Kopper responded:

> I know. The kiosk leases probably won't come until Friday. Working on the letter agreement for the credits on the miss rent and damages penalties. You will have all hopefully by Friday or Monday. Be patient. The vp of specialty leasing is traveling right now. Waiting on him before I can send the kiosk. We are good

---

2. Unless otherwise indicated, Karaagac's and Kopper's communications are quoted verbatim.

Case No. 2024-T-0071

**{¶31}** Karaagac replied, "Perfect thanks[.]"

**{¶32}** On January 4, 2021 (the week before the initial license agreements were set to expire), Karaagac wrote:

Hello Andrew,
I haven't received the letter agreement for the credits on miss rent and and damages penalties. Can you send me that as well. Thanks.

**{¶33}** Kopper responded, "Yes sir[.]" Kopper then asked, "Did you send the other agreements?" In his affidavit, Karaagac averred, "I understood the confirmation by [Ohio Valley] that the liquidated damages and penalties and rent were being removed and that I did not owe anything on the old leases before I signed the new leases." As stated, the parties entered into the renewed license agreements on January 7 and 8, 2021.

**{¶34}** About six months later, on July 12, 2021, Karaagac inquired about his "account status" and specifically the "2 months rent" that they "agreed on . . . over 6 months ago." Thereafter, the following exchange occurred:

[Kopper] I know and it will get taken care of
I don't forget what we agreed to

[Karaagac] Okay but I still haven't received any paperwork. Please those liquidation damage charges from 2019. Still I have not received my account statement showing those have been removed.

[Kopper] The letter agreement will come out next week

[Karaagac] Can you email me the agreement as well please.

[Kopper] What agreement? Your current agreeeement

[Karaagac] Nope the letter agreement which I thought is charges being erased

[Kopper] Ooo ya That will be emailed.

Case No. 2024-T-0071

**{¶35}** As stated, the renewed license agreements expired in early 2022. On November 17, 2022, Ohio Valley sent default letters to Appellants. The account statement accompanying the letter to Toys included "liquidated damages" of $2,807.28, and the account statement accompanying the letter to Toys N More included "liquidated damages" of $4,700. Karaagac averred that Kopper "confirmed in an e-mail dated November 29, 2022 that at least the liquidated damages and penalties/interest were removed from the account . . . ." Appellants attached a copy of Kopper's email, wherein he wrote:

> I ran through the accounts. In total it is showing an outstanding balance of $23,9474.82. I have gone through it and taken off charges and got it down to $7,626.32 as a total.

**{¶36}** In the list of amended charges for Toys and Toys N More in his email, Kopper removed the charges for liquidated damages:

> Below I break it down by location:
>
> Unit 730 [Toys N More]: Total amount $12,520.40
> Adjusted with charges taken off: $3,337.45
> Charges:
> Gross Rcpts: $45.15
> Fire Alarm Inspection: $1,836.22
> Marketing Fund: $33.22
> Rental Income: $1,200.00
> Storm Sewer: $22.86
> Trash Removal: $200.00
> . . .
>
> Unit 9063T [Toys]: Total Amount Due: $6,850.14
> Adjusted with charges taken off: $1,235.19
> Charges:
> Gross Rcpts: $8.02
> Temporary Rent: $1,006.67
> Trash Removal: $151.67
> Utilities: $68.83

11

Case No. 2024-T-0071

{¶37} When construed most strongly in Appellants' favor, the foregoing evidence supports a finding that Ohio Valley engaged in conduct subsequent to the alleged oral modification that treated the modification as operative. Specifically, Kopper's text messages may be reasonably construed as acknowledging Ohio Valley had agreed to remove the charges for liquidated damages and April/May 2020 rent. In addition, Kopper's email may be reasonably construed as acknowledging Ohio Valley had agreed to remove at least the charges for liquidated damages.

{¶38} The cases that Ohio Valley cites on appeal are factually distinguishable. For instance, Ohio Valley cites this Court's decision in *Reckart v. Lyons*, 1993 WL 317447 (11th Dist. Aug. 13, 1993), wherein this Court affirmed the trial court's grant of summary judgment and enforced a no-oral modification provision. *Id.* at *3. However, unlike in this case, there were no allegations in *Reckart* that the party opposing the existence of the oral modification engaged in subsequent acts that treated the modification as operative, i.e., there was no admission, stipulation, or subsequent course of conduct. *Smith*, 2012-Ohio-1672, at ¶ 44 (11th Dist.) (noting this distinction).

{¶39} Ohio Valley also cites the Tenth District's decision in *Star Leasing Co. v. G & S Metal Consultants, Inc.*, 2009-Ohio-1269 (10th Dist.). In that case, the parties disputed whether G&S had an option to purchase trailers despite the lack of such an option in their written contract. *Id.* at ¶ 21. The Tenth District found that a reasonable fact finder could not conclude that the parties agreed to waive the contract's no-oral modification provision. *Id.* at ¶ 27. Rather, the parties' actions suggested an understanding of the need for a signed agreement, given their repeated attempts to sign a proposed agreement. *Id.* In addition, the parties entered into a series of written

12

agreements "over the course of two years," which suggested Star Leasing's "continued adherence to the no-oral-modification clause." *Id.*

{¶40} Ohio Valley argues that the evidence in this case shows both parties "consistently understood" that a written instrument was necessary to modify the license agreements. We disagree. Despite multiple promises, it appears Kopper never sent the letter agreement to Karaagac, much less insisted on Appellants' signature. Construing the evidence most strongly in Appellants' favor, a reasonable fact finder could conclude that the purpose of the letter agreement was to *confirm* the parties' agreement to modify, not to *effectuate* the modification. In addition, Ohio Valley did not present similar course-of-dealing evidence as in *Star Leasing*.

{¶41} We also find that Appellants raised a genuine issue of material fact as to whether Ohio Valley should be estopped from recovering liquidated damages and April/May 2020 rent. First, for the reasons explained above, a reasonable fact finder could conclude that Ohio Valley orally agreed to remove the charges. Second, a reasonable fact finder could conclude that Appellants detrimentally relied on Ohio Valley's oral agreement. Karaagac averred, "I would not have signed new leases if it was not confirmed by [Ohio Valley] and Mr. Kopper that these charges were waived and would not carry forward." Third, a reasonable fact finder could conclude that Appellants' reliance was reasonable. Karaagac averred that he was directed to communicate with Kopper "regarding the leases or any issues or fees owed" and was advised that Kopper "had full authority to address such issues on behalf of [Ohio Valley]." Therefore, the evidence suggests Appellants had no reason to doubt Kopper's authority to bind Ohio Valley.

13

{¶42} Accordingly, Appellants' first assignment of error has merit. We reverse the trial court's grant of summary judgment to Ohio Valley on its breach of contract claims and remand for further proceedings consistent with this opinion.

**Estoppel By Laches**

{¶43} Appellants' second assignment of error states: "The Trial Court committed prejudicial error in granting plaintiff-appellee's motion for summary judgment finding that appellant did not present evidence of prejudice in support of the defenses of estoppel by laches and that the no-oral modification provisions contained in the license agreements precluded any finding of prejudice to the Appellants."

{¶44} Since we have reversed the trial court's grant of summary judgment to Ohio Valley on its breach of contract claims, Appellants' second assignment of error is dismissed as moot.

{¶45} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with the opinion.


EUGENE A. LUCCI, J.,

SCOTT LYNCH, J.,

concur.