[Cite as *Lima Refining Co. v. Linde Gas N. Am., L.L.C.*, 2022-Ohio-2185.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

LIMA REFINING COMPANY,

    PLAINTIFF-APPELLANT,

    v.

LINDE GAS NORTH AMERICA, LLC,

    DEFENDANT-APPELLEE.

CASE NO. 1-22-08

O P I N I O N

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV2021 0309**

**Judgment Affirmed**

**Date of Decision:  June 27, 2022**

---

**APPEARANCES:**

    *J. Alan Smith* **for Appellant**

    *Kenneth E. Smith* **for Appellee**

**WILLAMOWSKI, J.**

{**¶1**} Plaintiff-appellant Lima Refining Company ("LRC") appeals the judgment of the Allen County Court of Common Pleas, arguing that the trial court erred in granting defendant-appellee Linde Gas North America, LLC's ("LGNA") Civ.R. 12(B)(6) motion to dismiss. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{**¶2**} LRC "is engaged in the production of transportation fuel and petrochemical feedstocks." Doc. 1. LGNA "is a supplier of industrial gasses." Doc. 4. On December 17, 2013, LRC and LGNA entered a contract that begins as follows:

**1. Purchase and Sale of Product**

**1.1 Subject to Section 1.2, Linde shall provide and * * * sell and deliver Product to Customer [LRC], and Customer shall purchase from Linde, Customer's present and future requirements for Product for use in connection with Customer's operations * * *.**

Doc. 1, Ex. A. The contract defines "Product" as "liquid and/or gas product Nitrogen and/or Oxygen * * *." Doc. 1, Ex. A. In turn, Section 1.2 states:

**1.2 Notwithstanding anything to the contrary, Linde's obligations to supply Product *shall be limited to the Delivery Requirements*.**

**1.2.1 If Customer requires Product in excess of the Delivery Requirements ('Excess Product'), then Linde will provide such Excess Product on an 'as available' basis so long as the Excess Product is available or not otherwise committed to other customers. Linde shall offer such Excess Product to Customer at the prices set forth in Exhibit A, plus any additional costs associated with providing the Excess Product.**

**1.2.2 If Linde is unable to provide Excess Product to Customer as required, then Customer has the option of obtaining substitute liquid source product from a third party in excess of the Delivery Requirements.**

(Emphasis added.) Doc. 1, Ex. A. The contract then defined the "Delivery Requirements" in the following provision:

**IV. <u>Production and Delivery Capabilities</u> ('Delivery Requirements')**

**A. Nitrogen:**

**165,000 scf [standard cubic feet] per hour flow rate (± 5%) with the Linde Plant operating at barometric pressure of 14.7 psia and 70°F and 80% relative humidity ('Flow Rate').**

**B. Nitrogen Pipeline:**

**As available gaseous Nitrogen from the Linde Plant.**

Doc. 1, Ex A. The contract then states that "Nitrogen," as used in this agreement, refers to "nitrogen *gas* provided by Linde to Customer [LRC]." (Emphasis added.)

Doc. 1, Ex. A.

{¶3} LRC alleged that, in 2021, it demanded an amount of gaseous nitrogen that was in excess of 165,000 scfh. Doc. 1. LRC also demanded "250,000 scfh of liquid nitrogen * * *." Doc. 1, Ex. B. LRC stated, in a letter to LGNA, that the failure to confirm this order would constitute an anticipatory breach of the contract. Doc. 1, Ex. B. In response, LGNA stated that these demands "exceeded the Delivery Requirements" as the contract did not require LGNA to supply more than 165,000 scfh of gaseous nitrogen. Doc. 1, Ex. C. LGNA further stated that the failure to deliver the demanded amounts of nitrogen would not constitute a breach of the contract. Doc. 1, Ex. C.

{¶4} On October 5, 2021, LRC filed a complaint against LGNA that raised a breach of contract claim and requested a declaratory judgment. Doc. 1. On November 9, 2021, LGNA filed a motion to dismiss pursuant to Civ.R. 12(B)(6). Doc. 4. On December 30, 2021, the trial court issued a judgment entry that found the allegations in LRC's complaint could not establish (1) that LGNA was contractually obligated to provide an amount of gaseous nitrogen that exceeded 165,000 scfh; (2) that LGNA was contractually obligated to provide 250,000 scfh of liquid nitrogen; or (3) the existence of a justiciable controversy that could provide grounds for a declaratory judgment. Doc. 9. Accordingly, the trial court granted LGNA's motion to dismiss as to all claims in LRC's complaint. Doc. 9.

**{¶5}** LRC filed its notice of appeal on January 28, 2022. Doc. 11. On appeal, LRC raises the following two assignments of error:

**First Assignment of Error**

**The trial court erred when it held that Lima Refining Company could prove no set of facts entitling it to relief on its breach of contract claim.**

**Second Assignment of Error**

**The trial court erred when it held that Lima Refining Company could prove no set of facts entitling it to relief on its declaratory judgment claim.**

The contract at issue states that "New York law governs all matters pertaining to the validity, construction, and effect of this agreement." Doc. 1, Ex. A.

**{¶6}** "In contractual choice-of-law situations, the law of the chosen state is applied to resolve the substantive issues in the case, while the law of the forum state will govern procedural matters." *Citibank (South Dakota), N.A. v. Perz*, 191 Ohio App.3d 575, 2010-Ohio-5890, 947 N.E.2d 191, ¶ 28 (6th Dist.).

> **'Substantive law' may be defined as '[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties[,]' Black's Law Dictionary (8. Ed. Rev. 2004) 1470, while 'procedural law' may be defined as '[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves.' *Id.* at 1241.**

(Brackets sic.) *Columbus Steel Casings Co. v. Transportation & Transit Associates, LLC*, 10th Dist. Franklin No. 06AP-1247, 2007-Ohio-6640, ¶ 64.

*First Assignment of Error*

**{¶7}** LRC argues that the trial court erred in dismissing the breach of contract claims pursuant to Civ.R. 12(B)(6).

Legal Standard

**{¶8}** "A [Civ.R. 12(B)(6)] motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests whether the complaint is sufficient." *Pearsall v. Guernsey*, 2017-Ohio-681, 86 N.E.3d 69, ¶ 8 (3d Dist.), quoting *Bd. of Health of Defiance Cty. v. McCalla*, 3d Dist. Defiance No. 4-12-07, 2012-Ohio-4107, ¶ 33. For a Civ.R. 12(B)(6) dismissal to be proper, "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Arnett v. Precision Strip, Inc.*, 2012-Ohio-2693, 972 N.E.2d 168, ¶ 5 (3d Dist.), quoting *LeRoy v. Allen, Yurasek, & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, 872 N.E.2d 254, ¶ 14. "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144, 573 N.E.2d 1063 (1991).

**{¶9}** "An appellate court reviews a trial court's decision to grant a Civ.R. 12(B)(6) motion de novo." *Strahm v. Kagy*, 3d Dist. Allen No. 1-17-08, 2017-Ohio-4220, ¶ 7. In this process, "[t]he allegations of the complaint must be taken as true, and those allegations and any reasonable inferences drawn from them must be

construed in the nonmoving party's favor." *Faber v. Seneca County Sheriff's Dept.*, 2018-Ohio-786, 108 N.E.3d 213, ¶ 7 (3d Dist.), quoting *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12. Generally, a court "may consider only the statements and facts contained in the pleadings and may not consider or rely on evidence outside the complaint." *Main v. Lima*, 3d Dist. Allen No. 1-14-42, 2015-Ohio-2572, ¶ 37.

{¶10} However, "in an action alleging a breach of contract a reviewing court must look not only to the allegations in the complaint but also to the language of the contract." *Keenan v. Adecco Emp. Servs., Inc.*, 3d Dist. Allen No. 1-06-10, 2006-Ohio-3633, ¶ 9. Thus, "[m]aterial incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6) motion to dismiss." *State ex rel. Peoples v. Schneider*, 159 Ohio St.3d 360, 2020-Ohio-1071, 150 N.E.3d 946, ¶ 9, quoting *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 1997-Ohio-274, 673 N.E.2d 1281, fn. 1 (1997).

{¶11} "If a written instrument is attached to the complaint, it should be construed together with the averments of the complaint in determining whether there is any possible set of facts which would entitle the plaintiff to relief." *Allstate Ins. Co. v. Blaum*, 4th Dist. Ross No. 1490, 1988 WL 130692, *2 (Dec. 2, 1988).

> **If a plaintiff attaches documents to his complaint, which he claims establish his case, such documents can be used to his detriment to dismiss the case if they along with the complaint itself establish a failure to state a claim.** *Adlaka v. Giannini***, 7th Dist. [Mahoning]**

> **No. 05 MA 105, 2006-Ohio-4611, ¶ 34. To the extent the language in attached documents clearly forecloses a plaintiff's claims, the trial court may properly dismiss those claims under Civ.R. 12(B)(6).** *Denlinger v. [City of] Columbus*, **10th Dist. [Franklin] No. 00AP-315[, 2000 WL 1803923, \*5] (Dec. 7, 2000).**

*Beard v. New York Life Ins. & Annuity Corp.*, 10th Dist. Franklin No. 12AP-977, 2013-Ohio-3700, ¶ 11. In "consider[ing] documents attached or incorporated into the complaint," "a court need not accept as true allegations in a complaint that are contradicted by documents attached to the complaint." *Valentine v. Cedar Fair, L.P.*, 2021-Ohio-2144, 174 N.E.3d 900, ¶ 23 (6th Dist.).

{¶12} "The essential elements of a breach of contract cause of action are 'the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach[.]'" *Canzona v. Atanasio*, 118 A.D.3d 837, 838, 989 N.Y.S.2d 44 (N.Y. App. 2014). "When interpreting a contract * * * the court should arrive at a construction that will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized." *Sears v. Sears*, 138 A.D.3d 1401, 1401, 30 N.Y.S.3d 770 (N.Y. App. 2016), quoting *Trbovich v. Trbovich*, 122 A.D.3d 1381, 1383, 997 N.Y.S.2d 855 (N.Y. App. 2014). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to

the plain meaning of its terms." *Patsis v. Nicolia*, 120 A.D.3d 1326, 1327, 992 N.Y.S.2d 349 (N.Y. App. 2014).

Legal Analysis

**{¶13}** On appeal, LRC argues that the complaint and the materials attached thereto allege a set of facts that state two breach of contract claims. We will consider each of these two alleged breaches in turn.

**{¶14}** First, LRC asserts that LGNA breached the contract by failing to supply the amount of gaseous nitrogen that LRC demanded in excess of 165,000 scfh. Doc. 1. Section 1.2 of the contract addresses the sale and purchase of "Product" between LGNA and LRC:

> **1.2 Notwithstanding anything to the contrary, Linde's obligations to supply Product *shall be limited to the Delivery Requirements*.**
>
> > **1.2.1 If Customer requires Product in excess of the Delivery Requirements ('Excess Product'), then Linde will provide such Excess Product on an *'as available' basis so long as the Excess Product is available or not otherwise committed to other customers*. * * ***

(Emphasis added.) Doc. 1, Ex. A. The contract then sets forth the following as the "Delivery Requirements":

> **IV. <u>Production and Delivery Capabilities</u> ('Delivery Requirements')**
>
> **A. Nitrogen:**

> **165,000 scf [standard cubic feet] per hour flow rate (± 5%) with the Linde Plant operating at barometric pressure of 14.7 psia and 70°F and 80% relative humidity ('Flow Rate').**
>
> **B. Nitrogen Pipeline:**
>
> **As available gaseous Nitrogen from the Linde Plant.**

Doc. 1, Ex. A. Thus, an amount of gaseous nitrogen above 165,000 scfh qualifies as "Excess Product" under Section 1.2.1.[1] Doc. 1, Ex. A. LRC does not allege in its complaint that LGNA failed to provide 165,000 scfh of gaseous nitrogen and does not, therefore, allege that LGNA breached Section A of the delivery requirements provision of the contract. Doc. 1.

{¶15} Rather, LRC asserts that LGNA breached the contract by failing to supply the amount of excess gaseous nitrogen that LRC demanded. Section 1.2.1 of the contract and Section B of the delivery requirements provision indicate that LGNA's obligations are not necessarily limited to providing LRC with 165,000 scfh of gaseous nitrogen. Section 1.2.1 of the contract states that, if LRC requires more than 165,000 scfh of gaseous nitrogen, LGNA "will provide * * * Excess Product on an 'as available' basis" provided that "Excess Product is available or not otherwise committed to other customers." Doc. 1, Ex. A. Thus, beyond the 165,000 scfh amount of gaseous nitrogen stated in the delivery requirements, LGNA is

---

[1] We will refer to an amount of gaseous nitrogen that is in excess of 165,000 scfh as "excess gaseous nitrogen" in the remainder of this opinion.

contractually required to provide LRC with any excess gaseous nitrogen that is available and is not already committed to other customers.

{¶16} To establish that LGNA had excess product available, LRC points to an email exchange that it attached to the complaint. Doc. 1, Ex. G, H. These communications were between a representative of LGNA and a representative of LRC. Doc. 1, Ex. H. In an email, LGNA's representative offered the following:

> **During the upcoming turnaround, Linde [LGNA] will deliver Excess Product on a firm basis in the quantities reflected under the 'Truck Requirements' in the attached spreadsheet, subject to the other terms and conditions of the supply agreement.**

Doc. 1, Ex. H.[2] However, the emails indicate that LRC expressly rejected this offer. Doc. 1, Ex. G, H. Even if these communications were admissible evidence,[3] these emails do not support the assertion that LGNA breached Section 1.2.1 or Section B of the delivery requirements because this email exchange does not indicate that LGNA refused to provide LRC with the available excess product. This limited set of communications suggests that LGNA was acting consistently with the requirements of the contract and that LRC rejected the excess product that LGNA had available. Doc. 1, Ex. G, H.

---

[2] The spreadsheet referenced in this email communication was not attached to the complaint. Doc. 1. Similarly, the exact amount of gaseous nitrogen in excess of 165,000 scfh that was requested by LRC is not clear from the materials attached to the complaint.

[3] In its brief, appellee argues that these emails were exchanged in the process of settlement communications and are, therefore, inadmissible under Evid.R. 408. Appellee's Brief, 9.

{¶17} Under the contract, LGNA was not required to supply excess gaseous nitrogen in any amount that LRC demanded. Again, beyond the 165,000 scfh of gaseous nitrogen in the delivery requirements, the contract only required LGNA to provide excess gaseous nitrogen that was available and not otherwise committed to other customers. But the complaint nowhere alleges that the amount of excess gaseous nitrogen that LRC had demanded was available and nowhere alleges that the demanded amount of excess gaseous nitrogen was not already committed to LGNA's other customers. Doc. 1. In the absence of such allegations, LRC has not, under the circumstances of this case, set forth facts that could establish that LGNA breached Section 1.2.1 of the contract or Section B of the delivery requirements provision. Doc. 1, Ex. A.

{¶18} Further, having examined the remainder of the contract, we have found no other provision that would obligate LGNA to provide LRC with gaseous nitrogen in excess of 165,000 scfh. Doc. 1, Ex. A. Accordingly, we conclude that the complaint and that materials attached thereto are not sufficient to state a breach of contract claim arising from LGNA's failure to provide excess gaseous nitrogen in the amount that was demanded by LRC in this case.

{¶19} Second, LRC asserts that LGNA breached the contract by failing to provide 250,000 scfh of liquid nitrogen. To determine LGNA's contractual

obligations to supply liquid nitrogen, we return to Section 1.2 of the contract. The first portion of Section 1.2 reads as follows:

> **1.2 Notwithstanding anything to the contrary, Linde's obligations to supply Product *shall be limited to the Delivery Requirements*.**

(Emphasis added.) Doc. 1, Ex. A. In turn, the delivery requirements under the contract are as follows:

> **IV. <u>Production and Delivery Capabilities</u> ('Delivery Requirements')**
>
> **A. Nitrogen:**
>
> **165,000 scf [standard cubic feet] per hour flow rate (± 5%) with the Linde Plant operating at barometric pressure of 14.7 psia and 70°F and 80% relative humidity ('Flow Rate').**
>
> **B. Nitrogen Pipeline:**
>
> **As available gaseous Nitrogen from the Linde Plant.**

Doc. 1, Ex. A. The contract subsequently defines "Nitrogen" as "nitrogen *gas* provided by Linde to Customer [LRC]." (Emphasis added.) Doc. 1, Ex. A. Thus, the delivery requirements provision does not mention liquid nitrogen and does not contain any language that would require LGNA to supply LRC with 250,000 scfh of liquid nitrogen or any other set amount of liquid nitrogen. Doc. 1, Ex. A.

{¶20} However, where the delivery requirements provision uses the word "Nitrogen," Section 1.2.1 of the contract uses the word "Product":

> **1.2.1 If Customer requires Product in excess of the Delivery Requirements ('Excess Product'), then Linde will provide**

**such Excess Product on an *'as available' basis so long as the Excess Product is available or not otherwise committed to other customers*. * * ***

Doc. 1, Ex. A. The contract defines "Product" as "liquid and/or gas product Nitrogen and/or Oxygen * * *." Doc. 1, Ex. A.

{¶21} While Section 1.2.1 does not require LGNA to provide a set amount of liquid nitrogen, the plain language of this provision indicates that LGNA is to provide "Product," which includes gaseous and liquid nitrogen, on an "as available" basis. Doc. 1, Ex. A. However, in its complaint, LRC nowhere alleges that LGNA had 250,000 scfh of liquid nitrogen that was available and nowhere alleges that LGNA had 250,000 scfh of liquid nitrogen that was not already committed to other customers. Doc. 1. Thus, LRC did not set forth facts in its complaint that could establish that LGNA breached Section 1.2.1 of the contract by failing to provide 250,000 scfh of liquid nitrogen.

{¶22} While LRC identifies several places in the contract that mention liquid nitrogen, none of these provisions specify a set amount of liquid nitrogen that LGNA is obligated to supply LRC. These provisions do not contain any language that would expand LGNA's obligations beyond providing liquid nitrogen on an "as available" basis as described in Section 1.2.1 of the contract. Doc. 1, Ex. A. Further, in the arguments on appeal, LRC has not explained how any of these identified

provisions would obligate LGNA to provide LRC with the specific amount of 250,000 scfh of liquid nitrogen.

**{¶23}** On appeal, LRC also points to a statement in an email attached to the complaint in which a representative of LRC mentions that LGNA's failure to supply liquid nitrogen in this case was not in keeping with the previous practices of the parties. Doc. 1, Ex. D. We note that the complaint does not contain any factual allegations relating to the past practices of the parties that are briefly alluded to in this email. In the absence of other clarifying allegations in the complaint, the nature of these past practices is left completely unexplained.

**{¶24}** Further, LRC has not set forth allegations that could establish that LGNA's departure from the past practices of the parties constituted a breach of the plain and unambiguous language of the written contract. If the past practice of the parties was for LGNA to provide LRC with liquid nitrogen on an "as available" basis, then LGNA would not be acting inconsistently with this past practice or breaching the contract by failing to provide liquid nitrogen to LRC if no excess liquid nitrogen was available or was not already committed to other customers. Even when considering the complaint alongside this vague statement in the identified email, LRC cannot establish that LGNA breached the contract.

**{¶25}** In its pleadings and in its arguments on appeal, LRC has not identified a specific provision in the contract that LGNA breached by failing to supply LRC

with the demanded 250,000 scfh of liquid nitrogen. *See State ex rel. Maher v. City of Akron*, 9th Dist. Summit No. 28761, 2018-Ohio-4310, ¶ 22. Accordingly, having examined the contract and the materials attached thereto, we conclude that LRC has not alleged a set of facts that could establish that, under the circumstances of this case, LGNA breached the contract by failing to provide LRC with 250,000 scfh of liquid nitrogen.

{¶26} In conclusion, LRC has not pled facts that could establish that LGNA breached the contract attached to the complaint by failing to provide excess gaseous nitrogen in the amount LRC demanded or by failing to provide 250,000 scfh of liquid nitrogen. Thus, having examined the allegations in the complaint and the materials attached thereto, we conclude that LRC did not set forth facts that could establish a breach of contract claim upon which relief could be granted. *See Keenan, supra*, at ¶ 11-12; *Enduring Wellness, L.L.C. v. Roizen*, 8th Dist. Cuyahoga No. 108681, 2020-Ohio-3180, ¶ 77, 83. The trial court did not err in granting LGNA's motion to dismiss pursuant to Civ.R. 12(B)(6). LRC's first assignment of error is overruled.

*Second Assignment of Error*

{¶27} LRC argues that the trial court erred in dismissing the declaratory judgment action pursuant to Civ.R. 12(B)(6).

Legal Standard

**{¶28}** "The general purpose of a 'declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations.'" *Touro College v. Novus University Corp.*, 146 A.D.3d 679, 679, 45 N.Y.S.3d 458 (N.Y. App. 2017), quoting *James v. Alderton Dock Yards*, 256 N.Y. 298, 305, 176 N.E. 401 (N.Y. 1931). "[A] declaratory judgment ha[s] the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy * * *." *Salvador v. Town of Queensbury*, 162 A.D.3d 1359, 1360, 79 N.Y.S.3d 725 (N.Y. App. 2018), quoting NY CPLR § 3001. "To constitute a 'justiciable controversy,' there must be a real dispute between adverse parties, involving substantial legal interests for which a declaration of rights will have some practical effect." *Chanos v. MADAC, LLC*, 74 A.D.3d 1007, 1008, 903 N.Y.S.2d 506 (N.Y. App. 2010).

**{¶29}** A court may dismiss a declaratory action pursuant to a Civ.R. 12(B)(6) motion to dismiss "where there is no real controversy or justiciable issue between the parties * * *." *Dart v. Katz*, 2d Dist. Montgomery No. 28913, 2021-Ohio-1429, ¶ 94, quoting *Fioresi v. State Farm Mut. Auto. Ins. Co.*, 26 Ohio App.3d 203, 203-204, 499 N.E.2d 5 (1st Dist. 1985). "When reviewing a judgment rendered on a Civ.R. 12(B)(6) motion to dismiss, our standard of review is ordinarily de novo." *One Energy Enterprises, LLC v. Ohio Department of Transportation*, 10th Dist. Franklin No. 17AP-829, 2019-Ohio-359, ¶ 28.

**{¶30}** However, if a declaratory action is dismissed on the grounds that it is not justiciable, then appellate courts review the dismissal under an abuse of discretion standard. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13. *See Heasley, supra*, at ¶ 12 (holding that the decision to grant or deny declaratory relief is a matter committed to judicial discretion). But if "a trial court determines that a matter is appropriate for declaratory judgment, its holdings regarding questions of law are reviewed on a de novo basis." *Arnott* at ¶ 13. An abuse of discretion is more than a mere error in judgment. *Worden v. Worden*, 3d Dist. Marion No. 9-16-54, 2017-Ohio-8019, ¶ 26. "Rather, a determination that is arbitrary, capricious, or unreasonable is an abuse of discretion." *Schwieterman v. Schwieterman*, 3d Dist. Logan No. 8-19-49, 2020-Ohio-4881, ¶ 12.

Legal Analysis

**{¶31}** On appeal, LRC argues that the trial court erred in dismissing its declaratory judgment action because there were controversies as to whether LGNA was contractually obligated to provide the amount of excess gaseous nitrogen that was demanded by LRC and whether LGNA was contractually obligated to provide LRC with 250,000 scfh of liquid nitrogen. These assertions formed the basis of LRC's two alleged breach of contract claims. Importantly, the breach of contract claims and the declaratory judgment action rest upon the same factual allegations in the complaint.

{¶32} Under the first assignment of error, we concluded that the allegations in the complaint failed to set forth facts that could establish that LRC had a legal right under the contract to the amount of excess gaseous nitrogen demanded by LRC or to 250,000 scfh of liquid nitrogen. Thus, relying on our prior analysis, we conclude that these exact same allegations cannot, in this case, establish that LRC had "substantial legal interests for which a declaration of rights will have some practical effect." *Chanos, supra*, at 1008.

{¶33} In conclusion, the factual allegations in LRC's complaint do not establish a disputed legal interest or right under the contract. For this reason, LRC's complaint does not present a justiciable controversy. Accordingly, the trial court did not abuse its discretion in dismissing LRC's declaratory judgment claim pursuant to Civ.R. 12(B)(6). LRC's second assignment of error is overruled.

*Conclusion*

{¶34} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Allen County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/hls**