[Cite as *Rhoads v. Olde Worthington Business Assn.*, 2024-Ohio-2178.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Brent Rhoads et al., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 23AP-324 |
| v. | : | (C.P.C. No. 22CV-2205) |
| Olde Worthington Business Association et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on June 6, 2024

**On brief:** *Ricketts Co., L.P.A.*, and *Richard T. Ricketts*, for appellants. **Argued:** *Richard T. Ricketts*.

**On brief:** *Reminger Co., L.P.A., Zachary B. Pyers*, and *Amanda K. Wager*, for appellees. **Argued:** *Amanda K. Wager*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiffs-appellants, Brent Rhoads, Kathy Rhoads, and Rhoads Farm, Inc., appeal from the May 1, 2023 decision and entry issued by the Franklin County Court of Common Pleas which granted judgment on the pleadings in favor of defendants-appellees, Olde Worthington Business Association ("OWBA"), Annina Parini, and Christine Hawks (collectively "appellees"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} For over 50 years, Brent and Kathy Rhoads ("the Rhoads") have owned and operated Rhoads Farm, Inc. ("Rhoads Farm"), growing produce to sell at their business

location in Circleville, Ohio as well as various local farm markets. OWBA organizes and operates a farmer's market in Worthington, Ohio known as the Worthington Farmer's Market ("WFM"). The Rhoads have contracted with OWBA to participate in the WFM for over 15 years. By letter dated January 12, 2022, Parini, the Executive Director of The Worthington Partnership, notified the Rhoads they would not be permitted to participate in the WFM for the 2022 season.

{¶ 3} On April 6, 2022, the Rhoads filed a six-count complaint against appellees asserting causes of action for breach of contract, willful and wanton breach of contract, slander, defamation, declaratory judgment, and injunctive relief. Thereafter, on May 27, 2022, the Rhoads filed a motion for a temporary restraining order ("TRO") and preliminary injunction. Appellees opposed the motion on June 8, 2022. Following a non-evidentiary hearing held on June 8, 2022, the trial court, in a decision and entry issued June 9, 2022, denied the motion for a TRO and ordered the parties to correspond with the court to schedule a preliminary injunction hearing.

{¶ 4} On August 9, 2022, the Rhoads filed a motion for leave to amend their complaint instanter in order to add Rhoads Farm as a named plaintiff, to append certain documents to the amended complaint, and to assert additional factual allegations and causes of action. Over appellees' objection filed August 23, 2022, the trial court granted the Rhoads' motion on September 1, 2022.

{¶ 5} In the amended complaint, the Rhoads and Rhoads Farm (hereinafter "appellants") reiterated the general factual allegations set forth in the original complaint pertaining to appellants' 50-year produce business and 15-year affiliation with OWBA and participation in the WFM. In addition, appellants asserted they had contracted in writing with OWBA to participate in the WFM in 2019, 2020, and 2021 and that those contracts, as well as the relationship between the parties, were governed by a document entitled "Outdoor Rules and Regulations" ("Regulations").

{¶ 6} Appellants attached to their amended complaint copies of the 2019, 2020, and 2021 written contracts and the 2021 Regulations.[1] The Regulations provide that such were "established by The Worthington Partnership and the [WFM] to maintain a

---

[1] Appellants asserted that exhibit D, the "2021 Outdoor Rules and Regulations" is "a representative copy" of the "Rules and Regulations" governing the 2019, 2020, and 2021 written contracts. (Am. Compl. at ¶ 15.)

productive marketplace for both vendors and consumers." (Am. Compl., Ex. D at 1.) Hawks is designated as "Market Manager" in charge of the daily operations of the WFM, including resolution of any disputes regarding the Regulations. (Ex. D at 1.) The Regulations include provisions related to vendor admission to the WFM, stating that "[t]he approval to participate in the [WFM] will not exceed one growing season" and that approval is based on submission of certain relevant documentation. (Ex. D at 1, Sec. I, Admissions.) The Regulations further provide that "[s]ubmission of [the relevant documentation] does not guarantee participation in the [WFM]" and that decisions regarding admission to the WFM "shall be final." (Ex. D at 2.)

{¶ 7} The Regulations also include protocols and procedures created by the WFM addressing complaints between vendors and disciplinary action by the WFM against vendors. The Regulations provide that complaints between vendors shall be submitted, in writing, to the Market Manager for resolution. The Market Manager may share the complaint with the Market Advisory Board and the Worthington Partnership Board of Directors. The Market Manager's resolution of the dispute is final. Regarding disciplinary action by the WFM against vendors, "grounds for removal" include, inter alia, engaging in conduct unbecoming a professional, which includes exhibiting threatening or intimidating behavior, bullying or making disrespectful or disparaging comments toward or about WFM or Worthington Partnership staff, volunteers, customers, vendors, partners or others affiliated with the WFM. (Ex. D at 9.)

{¶ 8} The 2019, 2020, and 2021 written contracts provide, in relevant part, that "I have read, understand and agree to adhere to the stated regulations set forth by the [WFM]." (Am. Compl., Ex. A-C.) The written contracts further provide that submission of required documentation "does not guarantee participation in the [WFM]." (Ex. A at 2.) The 2019 and 2020 contracts also state that "I have read the * * * Rules and Regulations." (Ex. A at 2.) The 2021 contract contains slightly different language pertaining to the Regulations, i.e., "I have read and agree to abide by the 2021 Market Rules and Regulations if I am accepted into the [WFM]." (Am. Compl., Ex. C at 2.)

{¶ 9} Appellants also appended to their amended complaint a copy of Parini's January 12, 2022 letter advising appellants that due to unprofessional and disruptive behavior exhibited during the 2021 WFM season, "your participation in the [WFM] has

been terminated and applications for future markets with us will not be considered." (Am. Compl., Ex. E.) The letter noted that the advisement was being made at the beginning of the 2022 application process so that appellants could make alternate arrangements for the upcoming growing season.

{¶ 10} Appellants set forth nine causes of action against appellees. In their first cause of action, appellants claimed that appellees breached the 2020 and 2021 written contracts. Specifically, appellants asserted appellees breached the contracts by "fail[ing] to comply with and/or follow their own published * * * Regulations,", "fail[ing] to comply with [the Regulations'] procedures as to discipline of its vendors," "fail[ing] to provide notice to the [appellants] of any asserted violations of the Contracts and the * * * Regulations," "fail[ing] to maintain and/or seek the involvement of the Market Advisory Board in the disciplinary process," "refus[ing] to allow Rhoads Farm to participate in the 2022 [WFM]," and "refus[ing] to allow Rhoads Farm to participate in future [WFMs]." (Am. Compl. at ¶ 16, 17, 18, 19, 21, 24.) Appellants further maintained that appellees' breach of the 2020 and 2021 written contracts "did not and does not constitute good faith and fair dealing." (Am. Compl. at ¶ 35.)

{¶ 11} In their second cause of action, appellants claimed appellees' refusal to allow them to participate in the 2022 and future WFMs constituted a breach of appellants' course of conduct and implied-in-fact and implied-in-law contractual rights and a breach of the covenant of good faith and fair dealing. In their third cause of action, appellants asserted that appellees "breaches of contract * * * constitute a willful and wanton breach of contract taken with malice and/or made in bad faith." (Am. Compl. at ¶ 46.)

{¶ 12} Appellants' next five causes of action asserted claims specifically against Parini and Hawks. In the fourth and fifth causes of action, appellants asserted that "in their representative and/or individual capacities," Parini and Hawks engaged in slander and libel by making "written statements and/or oral comments with the intent to disparage the [appellants]," and by "verbally" and "in writing" making "inaccurate, erroneous and wrongful statements of material fact to and between third parties as to and in respect of the [appellants]." (Am. Compl. at ¶ 28, 49, 55.) In support of these claims, appellants referenced exhibit H attached to the amended complaint. Exhibit H is a copy of text messages sent on May 16, 2020 between Parini and a person named "Michelle" discussing

Mr. Rhoads. Appellants asserted the text messages depicted in exhibit H were "published to the market manager of the Clintonville Farmers Market." (Am. Compl. at ¶ 56.) Appellants alleged that "[a]s a result of the defamatory and/or slanderous comments made by [appellees], the Rhoads were excluded from participation in the 2022 Clintonville Farmer's Market," and that the "[w]ritten [f]alse [s]tatements caused [appellants] the loss of their ability to participate in the 2022 Clintonville Farmer's Market." (Am. Compl. at ¶ 29, 58.)

{¶ 13} In their sixth and seventh causes of action, appellants asserted claims against Parini and Hawks for tortious interference with contract and civil conspiracy, respectively. As to their tortious inference claim, appellants alleged that with "actual knowledge of the existence of the 2020 and 2021 Contracts the Rhoads had entered into with the [O]WBA" and with "actual knowledge of the [O]WBA's implied-in-fact and implied at law contractual obligations," Parini and Hawks "knowingly took steps to interfere with, breach and wrongfully terminate [appellants'] contractual rights with the [O]WBA" and that such conduct "was willful, wanton, malicious and constituted bad faith conduct in breaching and interfering with [appellants'] contractual rights with the [O]WBA." (Am. Compl. at ¶ 62-65.) In connection with this claim, appellants referenced exhibits F and G attached to the amended complaint. Exhibits F and G are copies of text messages sent between Parini and Hawks in June 2021 discussing Mr. Rhoads' conduct during the 2021 WFM season and WFM's potential responses thereto. Regarding their civil conspiracy claim, appellants alleged Parini and Hawks "engaged in a civil conspiracy to keep the Rhoads, without just cause, from participating in the 2022 (and future years) [WFM]" and "colluded and conspired to tortiously interfere with and in taking steps to intentionally breach and terminate [appellants'] contractual rights with the [O]WBA." (Am. Compl. at ¶ 30, 69, 70.)

{¶ 14} Appellants' eighth cause of action alleged that Parini and Hawks "violated [O]WBA's code of conduct, rules and regulations and/or their respective job descriptions, and, as such, appellants were entitled to a declaratory judgment that Parini and Hawks "violated the Governing Regulations of the [O]WBA." (Am. Compl. at ¶ 74-75.)

{¶ 15} In their ninth and final cause of action, appellants sought a permanent injunction prohibiting appellees from excluding them from participating in the WFM in 2022 and future years.

{¶ 16} Appellees answered appellants' amended complaint on September 15, 2022. Thereafter, on September 27, 2022, appellees filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C). Therein, appellees argued appellants' amended complaint did not assert any factual basis that could be construed as constituting a breach of the 2020 and 2021 written contracts. Appellees further argued that appellants' amended complaint lacked factual allegations that could be construed as establishing an express, implied-in-fact or implied-in-law contract for the 2022 WFM season. Appellees also maintained that appellants' amended complaint failed to assert factual allegations that could be construed as demonstrating a prima facie case for slander and that appellants' libel claim was barred by the applicable statute of limitations. Finally, appellees contended that the factual allegations in appellants' amended complaint were insufficient to state a claim for tortious interference with contract, and without an underlying tort, the claim for civil conspiracy failed. Appellees' motion did not specifically address appellants' claims for declaratory judgment or injunctive relief.[2]

{¶ 17} Appellants filed a memorandum in opposition to appellees' motion for judgment on the pleadings on October 11, 2022. Therein, appellants argued that judgment on the pleadings was improper as to all nine claims set forth in their amended complaint. Regarding the claims for breach of the 2020 and 2021 written contracts, appellants argued that the amended complaint set forth factual allegations upon which they could recover on those claims, that the 2020 and 2021 written contracts did not include integration clauses, thereby necessitating the court to consider evidence outside the pleadings, and that even if the contracts contained integration clauses, the language in the contracts was ambiguous, thereby requiring examination of parol or extrinsic evidence to determine the parties' intent. Appellants further argued that their amended complaint properly pled the underlying factual basis for the slander claim, and that whether their libel claim was barred by a statute of limitations is a matter to be determined at trial or by summary judgment and not by a motion for judgment on the pleadings. Regarding their tortious interference and civil conspiracy claims, appellants argued the amended complaint alleged sufficient facts to demonstrate that Parini and Hawks, both individually and in concert, fabricated a basis

---

[2] Appellees noted the parties were presently involved in a hearing on appellants' May 27, 2022 motion for preliminary injunction. That hearing resulted in the trial court's May 1, 2023 decision and entry denying appellants' motion for preliminary injunction.

upon which to justify termination of appellants' 15-year relationship with OWBA and the WFM.  On October 18, 2022, appellees filed a reply in support of their motion for judgment on the pleadings.[3]

{¶ 18}  On May 1, 2023, the trial court issued a decision and entry granting appellees' motion for judgment on the pleadings as to each of the nine claims set forth in appellants' amended complaint.  As to appellants' first cause of action alleging breach of the 2020 and 2021 written contracts, the trial court first found appellants' failure to allege in their amended complaint that any provision of the contracts was ambiguous was fatal to their integration argument.  Notwithstanding that finding, the trial court reviewed the language of both the written contracts and the Regulations.  Finding no ambiguity in those documents, the court concluded that the written contracts were fully integrated and, as such, the parol evidence rule prohibited consideration of evidence outside the four corners of those documents.  Accordingly, the court rejected appellants' contention that the lack of an integration clause in the written contracts prohibited the court from granting appellees' motion for judgment on the pleadings.

{¶ 19}  Regarding appellants' breach of the implied duty of good faith and fair dealing claim, the trial court found that the amended complaint alleged only a conclusory statement to that effect and that the allegations upon which appellants based their claim were not based on obligations within the written contracts or Regulations.

{¶ 20}  As to appellants' course of conduct/course of performance claims, the trial court first observed that having found the written contracts were unambiguous, interpretation of the contracts through consideration of extrinsic evidence of course of conduct/course of performance was proscribed by law.  Further, applying the legal maxim that the express terms of an agreement prevail over the parties' course of conduct absent an oral modification of the contract, the court, noting that the amended complaint contained no allegations the parties entered into an oral modification of the written contracts and that language in the Regulations stating each contract would not exceed one growing season and that appellants applied and signed a new contract each year, found inapplicable appellants' course of conduct/course of performance argument.  As such, the

---

[3] On October 26, 2022, appellants filed a motion for leave to file instanter a surreply to appellees' reply in support of their motion for judgment on the pleadings. By decision and entry issued January 17, 2023, the trial court denied appellants' October 26, 2022 motion.

court determined appellees were entitled to judgment on the pleadings on appellants' claim that appellees' refusal to permit appellants to participate in the 2022 WFM violated the written contracts.

{¶ 21} The trial court further found that judgment on the pleadings was appropriate as to appellants' remaining claims for breach of the written contracts. As to appellants' claim that appellees failed to provide appellants with written notice of their alleged violations of the Regulations and failed to involve the Advisory Board in the disciplinary process, the court observed that such claims were based on obligations not required by the written contracts or Regulations. Regarding appellants' claim that appellees failed to comply with the Regulations and the disciplinary procedures set forth therein, the court found that appellants pleaded only conclusory allegations without supporting factual allegations as to what Regulations were violated or what conduct constituted a violation.

{¶ 22} Addressing appellants' second cause of action alleging appellees' refusal to allow appellants to participate in the 2022 WFM breached implied-in-fact and implied-in-law contracts, the trial court first found appellants' amended complaint provided no facts from which an inference could be drawn that the parties, through conduct, declarations, or tacit understanding, entered into an implied-in-fact contract for appellants' participation in the 2022 WFM, as appellants' amended complaint indicated that appellees expressly informed appellants they were not permitted to participate in the 2022 and future WFMs. The trial court further found that appellants failed to allege any facts that could be construed as establishing an implied-in-law contract, i.e., that appellees were unjustly enriched by refusing to permit appellants to participate in the 2022 WFM.

{¶ 23} Regarding appellants' third cause of action alleging willful and wanton breach of contract, the trial court found that because appellants' amended complaint failed to assert factual allegations establishing breach of contract, appellants' derivative claim for breach of the duty of good faith and fair dealing could not survive.

{¶ 24} As to appellants' fourth cause of action for slander, the trial court found the amended complaint contained only legal conclusions without any factual support as to the content, timing, and recipient of the alleged slanderous statements. The court further observed that appellants' reference to written text messages allegedly including defamatory

terms did not support their claim for slander, as that tort involves spoken defamatory words.

{¶ 25} Concerning appellants' fifth cause of action for libel, the trial court rejected appellants' unsupported legal argument that whether a defamation claim is barred by a statute of limitations is a matter to be determined by summary judgment or at trial. The trial court noted that judgment on the pleadings may be entered where the complaint conclusively demonstrates on its face that the action is barred by the applicable statute of limitations. Noting that although appellants' amended complaint alleged multiple instances of libel, it referenced only exhibit H; as such, the court found that since no facts were presented to support any allegations based on any written statements other than those contained in exhibit H, judgment on the pleadings was appropriate as to appellants' libel claim involving any alleged written statements other than those contained in exhibit H. As to appellants' libel claim based upon the written statements (text messages) referenced in exhibit H, the trial court found that such was barred by the one-year statute of limitations set forth in R.C. 2305.11. The court first observed that appellants failed to plead that the text messages were published to a third-party on a specific date. The court further observed that examination of exhibit H revealed the text messages contained therein were published on May 16, 2020, and appellants filed their initial complaint on April 6, 2022, more than one year after the publication and accrual date of their libel claim.

{¶ 26} Regarding appellants' sixth cause of action for tortious interference with contract, the trial court first observed that the amended complaint did not specifically state with which contracts Parini and Hawks allegedly interfered; however, the court found that the amended complaint suggested the tortious interference claim was based solely on alleged interference with quasi-contracts pertaining to appellants' participation in the 2022 or future WFMs. The court concluded that since it had previously determined appellees were entitled to judgment on the pleadings on appellants' various quasi-contract claims because they failed to plead the existence of a contract between the parties for 2022 or future WFMs, appellants' claim failed. Relatedly, the trial court concluded that because appellees were entitled to judgment on the pleadings on appellants' tortious interference claim, appellants' seventh claim for civil conspiracy, which requires an underlying tort, could not proceed.

{¶ 27} The trial court also granted appellees' motion for judgment on the pleadings as to appellants' eighth cause of action for declaratory judgment on the basis that its grant of judgment on the pleadings as to each of appellants' contract claims resulted in no real or justiciable issue between the parties. Regarding appellants' ninth cause of action for injunctive relief, the trial court found that having determined no set of facts exist that would entitle appellants to participate in the 2022 or future WFMs, judgment on the pleadings was appropriate.

{¶ 28} Having granted judgment on the pleadings as to all nine causes of action, the trial court entered judgment in favor of appellees.

## II. Assignments of Error

{¶ 29} In a timely appeal,[4] appellants assert the following two assignments of error for our review:

> [I.] The Trial Court committed reversible error when it granted [appellees'] Motion for Judgment on the Pleadings as to each and every count of the [appellants'] Amended Complaint.
>
> [II.] The Trial Court committed reversible error when it determined that a Motion for Judgment on the Pleadings could [ever] be granted when a properly alleged breach of contract is asserted, and the contract does not contain an "integration provision."

## III. Discussion

{¶ 30} In the first assignment of error, appellants contend the trial court committed reversible error in granting appellees' motion for judgment on the pleadings on each of the counts asserted in appellants' amended complaint.[5] We disagree.

{¶ 31} Civ.R. 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." " 'Civ.R. 12(C) motions are specifically for resolving questions of law.' " *Chen v. Shie-Ming Hwang*,

---

[4] Although appellants' May 26, 2023 notice of appeal purports to appeal a separate decision and entry issued by the trial court on May 1, 2023 which denied appellants' May 27, 2022 motion for a preliminary injunction, appellants' briefing contains no argument related to that decision.

[5] Notwithstanding their assertion that the trial court erred in granting appellees' motion for judgment on the pleadings "as to each and every count" set forth in their amended complaint, appellants do not assert any argument as to the trial court's entry of judgment on the pleadings on their claims for declaratory judgment and injunctive relief.

10th Dist. No. 14AP-535, 2014-Ohio-5863, ¶ 17, quoting *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). An appellate court reviews a motion for judgment on the pleadings de novo, without deference to the trial court's determination. *Id.*, citing *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 807 (10th Dist.2000). "Thus, we are restricted, as was the trial court, to the allegations in the pleadings, as well as material incorporated by reference or attached as exhibits to those pleadings." *Id.*, citing *Curtis v. Ohio Adult Parole Auth.*, 10th Dist. No. 04AP-1214, 2006-Ohio-15, ¶ 24.

{¶ 32} Under Civ.R. 12(C), dismissal is appropriate where a court construes as true all material allegations in the complaint, with all reasonable inferences to be drawn therefrom in favor of the non-moving party and finds beyond doubt that the non-moving party could prove no set of facts in support of his claim that would entitle him to relief. *Midwest Pride IV* at 570. A Civ.R. 12(C) motion "requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." *Id.* " '[W]hile the factual allegations of a complaint must be taken as true, unsupported legal conclusions are insufficient to withstand a Civ.R. 12(C) motion.' " *Adena at Miami Bluffs Condominium Owners' Assn. v. Woodward*, 12th Dist. No. CA2020-08-044, 2021-Ohio-3872, ¶ 17, quoting *Georgantonis v. Reading*, 1st Dist. No. C-190615, 2020-Ohio-3961, ¶ 22, citing *Johnson-Newberry v. Cuyahoga Cty. Child & Family Servs.*, 8th Dist. No. 107424, 2019-Ohio-3655, ¶ 14; *Sosic v. Stephen Hovancsek & Assocs., Inc.*, 8th Dist. No. 109993, 2021-Ohio-2592, ¶ 17 (under Civ.R. 12(C), "a well-pled complaint must include factual allegations going to each element of the claim, and conclusory statements without any factual allegations in support are insufficient").

{¶ 33} Appellants first contend the trial court erred in granting judgment on the pleadings as to their first cause of action for breach of the 2020 and 2021 written contracts. " '[I]n an action alleging a breach of contract a reviewing court must look not only to the allegations in the complaint but also to the language of the contract.' " *Lima Refining Co. v. Linde Gas N. Am., L.L.C.*, 3d Dist. No. 1-22-08, 2022-Ohio-2185, ¶ 10, quoting *Keenan v. Adecco Emp. Servs.*, 3d Dist. No. 1-06-10, 2006-Ohio-3633, ¶ 9. "In 'consider[ing] documents attached [to] or incorporated into the complaint,' 'a court need not accept as true allegations in a complaint that are contradicted by documents attached to the

complaint.' " *Lima Refining Co.* at ¶ 11, quoting *Valentine v. Cedar Fair, L.P.*, 6th Dist. No. E-20-018, 2021-Ohio-2144, ¶ 23.

**{¶ 34}** "To successfully prosecute a breach of contract claim, a plaintiff must present evidence of (1) the existence of a contract, (2) plaintiff's performance of the contract, (3) defendant's breach of the contract, and (4) plaintiff's loss or damage as a result of defendant's breach." *Barlay v. Yoga's Drive-Thru*, 10th Dist. No. 03AP-545, 2003-Ohio-7164, ¶ 6, citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600 (2d Dist.1994). " 'To prove the existence of a contract, a plaintiff must show that both parties consented to the terms of the contract, that there was a "meeting of the minds" of both parties, and that the terms of the contract are definite and certain.' " *Id.*, quoting *Nilaver v. Osborn*, 137 Ohio App.3d 469, 483 (2d Dist.2000), quoting *McSweeney v. Jackson*, 117 Ohio App.3d 623, 631 (4th Dist.1996).

**{¶ 35}** "When construing the terms of a written contract, the court's objective is to give effect to the intent of the parties, which is presumed to rest in the language the parties chose to employ." *Mulvey v. GuideOne Mut. Ins. Co.*, 10th Dist. No. 17AP-47, 2017-Ohio-7902, ¶ 15. Common words appearing in a written contract will be given their ordinary meaning unless manifest absurdity results. *Id.*, citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus. Where the terms of a written contract are "clear and unambiguous, the court need not go beyond the plain language of the contract in order to ascertain the rights and obligations of the parties." *Id.*, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989).

**{¶ 36}** As noted above, appellants alleged that appellees breached the 2020 and 2021 written contracts and Regulations by failing to: (1) comply with the procedures regarding disciplining vendors, (2) provide written notice of violations, (3) maintain and/or seek the involvement of the Advisory Board in the disciplinary process, (4) include Rhoads Farm as a vendor for the 2022 season, and (5) include Rhoads Farm as a vendor in future market seasons. In their briefing, appellants simply reassert these conclusory statements and argue "it cannot be stated that the Appellants did not meet the standards necessary to establish a breach of contract claim[]." (Appellants' Brief at 11.) Appellants do not address the plain language of the contracts or Regulations or how their claim succeeds in light of the language contained in those documents. Instead, appellants suggest the trial court's

decision should be reversed simply because the court looked to the plain language included in the written documents. Indeed, appellants argue: "the Trial Court went far beyond the face of the pleadings in entering its decision. In fact, in multiple instances, the Court made specific interpretations of the Contracts, exhibits appended to the Complaint and/or the intent of or lack of intent of the parties in respect of the contracts. Such decisions are not appropriate in a motion for judgment on the pleadings, but rather are only appropriate after the parties have had the opportunity to complete discovery and present a full body of facts to the trier of fact." (Appellants' Brief at 17.) Contrary to appellants' argument, a determination as to whether appellants' breach of contract claims survive in light of the plain language set forth in the documents appellants attached to their amended complaint is appropriate. *Chen* at ¶ 17; *Lima Refining Co.* at ¶ 10.

{¶ 37} Appellants' breach of contract claim largely focuses on appellees' failure to allow them to participate in the 2022 and subsequent WFM seasons. However, the Regulations contain an express provision affording appellees complete discretion as to vendor acceptance for a particular WFM season. Further, the contracts and Regulations provide that simply applying for vendor admission does not guarantee acceptance. Moreover, the Regulations provide that acceptance of a vendor for admission to the WFM is for a definite temporal term, i.e., one growing season. In their amended complaint, appellants failed to point to any term in either the contracts or the Regulations guaranteeing their admission as a vendor beyond the 2021 WFM season. The express terms of the contracts and Regulations make clear the parties' intent that appellants were required to apply for acceptance as a vendor each market season. Such intent is further evidenced by the fact that appellants annually applied for admission as a vendor.

{¶ 38} As to appellants' breach of contract claim pertaining to appellees' alleged non-compliance with certain provisions of the written contracts and Regulations, we note appellants failed to assert any provision within those documents requiring appellees to provide written notice to vendors of any violations of the Regulations or to involve the Advisory Board in the vendor disciplinary process. The only reference in the Regulations to written notice or the Advisory Board pertains to vendor complaints made by other vendors. In such cases, the Regulations provide that complaints between vendors must be submitted in writing to the Market Manager and that the Market Manager *may* share such

complaints "with the Market Advisory Board and the Partnership Board of Directors." (Am. Compl., Ex. D at 9.) Use of the word "may" connotes that the Market Manager has the option to share a complaint but was not required to do so.

{¶ 39} Further, the only reference in the Regulations to the disciplinary process is related to removal of a vendor during the current market season. There is no dispute that appellants completed the 2021 season. Thereafter, appellees provided appellants with advance notice that it would not consider their application for the 2022 season due to appellants' conduct during the 2021 season. Because appellants were not removed from a current market season, the "grounds for removal" section of the Regulations does not apply.

{¶ 40} Construing as true all material allegations in the amended complaint and the documents attached thereto and drawing all reasonable inferences therefrom in favor of appellants, we find beyond doubt that appellants could prove no set of facts in support of their claims for breach of the 2020 and 2021 written contracts; accordingly, we conclude the trial court properly granted appellees' motion for judgment on the pleadings as to this claim.

{¶ 41} We next turn to appellants' contention that the trial court improperly granted appellees' motion for judgment on the pleadings on their claims that appellees' refusal to allow them to participate in the 2022 and future WFMs breached their course of conduct and implied-in-fact and implied-in-law contractual rights.

{¶ 42} There are three basic types of contracts: express, implied-in-fact, and implied-in-law. *Legros v. Tarr*, 44 Ohio St.3d 1, 6 (1989). Express and implied-in-fact contracts differ from contracts implied-in-law in that contracts implied-in-law are not true contracts; they are a legal fiction used to achieve an equitable result and, as such, are not dependent on whether the elements of a contract are proven. *Barlay* at ¶ 7, citing *Stepp v. Freeman*, 119 Ohio App.3d 68, 73 (2d Dist.1997). In contrast, the existence of express or implied-in-fact contracts does hinge upon proof of all the elements of a contract. *Id.*, citing *Stepp* at 74, citing *Lucas v. Costantini*, 13 Ohio App.3d 367, 368 (12th Dist.1983).

{¶ 43} In an express contract, the parties actually assent to the terms of the contract in the form of an offer and acceptance. *Legros* at 6; *Barlay* at ¶ 8. "By contrast, the parties' meeting of the minds in implied-in-fact contracts 'is shown by the surrounding circumstances, including the conduct and declarations of the parties, that make it inferable

that the contract exists as a matter of tacit understanding,' and an agreement was intended." *Barlay* at ¶ 8, quoting *Stepp* at 74. In a contract implied-in-law there is no meeting of the minds, but civil liability arises out of the obligation cast upon a party in receipt of benefits which he is not justly entitled to retain. *Legros* at 6. The elements of unjust enrichment are: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." (Internal quotations omitted.) *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

{¶ 44} Appellants' amended complaint includes no factual assertions from which an inference may be drawn that the parties, through conduct, declarations, or tacit understanding, entered into an implied-in-fact contract for the 2022 and subsequent WFM seasons. Indeed, in the amended complaint, appellants did not allege that they applied to participate in the 2022 season as they had in previous seasons. Further, appellants averred that appellees expressly informed them via the January 12, 2022 letter that they were not permitted to participate in WFMs subsequent to the 2021 season. Similarly, appellants' amended complaint includes no factual assertions from which an inference may be drawn that appellees were unjustly enriched by refusing to permit appellants to participate in WFMs after the 2021 season. Appellants' amended complaint is devoid of factual allegations that they conferred a benefit upon appellees with regard to participation in WFMs subsequent to the 2021 season.

{¶ 45} Appellants also contend that "course of conduct * * * is to be considered by the trier of fact as to the interpretation and enforcement of a Contract." (Appellants' Brief at 15.) Appellants suggest the course of conduct between them and appellees, presumably based on appellants' 15-year participation in the WFM, establishes the existence of a contract for the 2022 WFM season and that appellees breached that contract by refusing to allow them to participate. A court may look to the parties' course of conduct as evidence of their construction of a contract when the contract language is unclear. *Star Leasing Co. v. G&S Metal Consultants, Inc.*, 10th Dist. No. 08AP-713, 2009-Ohio-1269, ¶ 28, citing *Mentor Indus. Complex v. N. Coast Wood Prods., Inc.*, 11th Dist. No. 2000-L-116 (July 20, 2001). However, where the contract language is clear and unambiguous, courts may not

create a new contract by finding an intent not expressed by the contractual language. *Id.*, citing *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992).

{¶ 46} Here, the written contracts and Regulations appended to appellants' amended complaint clearly and unambiguously establish that appellants applied each year for admission as a vendor in the WFM, that admission in the WFM was not guaranteed, and that admission was limited to one growing season. The clear and unambiguous language of the written contracts and Regulations belies any inference that the parties intended to create a new contract for 2022 based solely on their previous course of conduct.

{¶ 47} Construing as true all material allegations in the amended complaint and the documents attached thereto and drawing all reasonable inferences therefrom in favor of appellants, we find beyond doubt that appellants could prove no set of facts in support of their claims for breach of a course of conduct, implied-in-fact or implied-in-law contract for 2022; accordingly, we conclude the trial court properly granted appellees' motion for judgment on the pleadings as to these claims.

{¶ 48} We next consider appellants' contention that appellees' breach of the 2020 and 2021 written contracts and the course of conduct and implied-in-fact and implied-in-law contractual rights for 2022 constitutes a breach of the implied covenant of good faith and fair dealing. We first observe appellants alleged in their amended complaint only conclusory statements, without factual support, that appellees' breaches of contract violated the covenant of good faith and fair dealing. Moreover, " ' "[a] claim for breach of contract subsumes the accompanying claim for breach of the duty of good faith and fair dealing." ' " *Williams v. Natl. Assn. for the Advancement of Colored People*, 10th Dist. No. 18AP-476, 2019-Ohio-1897, ¶ 26, quoting *Gianetti v. Teakwood, Ltd.*, 10th Dist. No. 15AP-413, 2016-Ohio-213, ¶ 35, quoting *Krukrubo v. Fifth Third Bank*, 10th Dist. No. 07AP-270, 2007-Ohio-7007, ¶ 19. Having already determined that appellants failed to assert a claim for breach of contract, appellants necessarily also failed to assert a claim for breach of the duty of good faith and fair dealing. *Id.*, citing *Gianetti* at ¶ 35, citing *Krukrubo* at ¶ 19. Thus, the trial court did not err in granting appellees' motion for judgment on the pleadings on appellants' claim for breach of an implied covenant of good faith and fair dealing.

{¶ 49} Next, we address appellants' contention the trial court erred in granting appellees' motion for judgment on the pleadings on their defamation claims against Parini and Hawks.

{¶ 50} " '[D]efamation occurs when a publication contains a false statement "made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business, or profession." ' " *McClure v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-535, 2020-Ohio-1035, ¶ 10, quoting *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995). " 'Defamation includes both libel and slander; libel refers to written or printed defamatory words, while slander refers to spoken defamatory words.' " *Id.*, quoting *Gilson v. Am. Inst. of Alternative Medicine*, 10th Dist. No. 15AP-548, 2016-Ohio-1324, ¶ 37, citing *Woods v. Capital Univ.*, 10th Dist. No. 09AP-166, 2009-Ohio-5672, ¶ 27. " 'The elements of defamation, whether slander or libel, are: (1) the defendant made a false and defamatory statement concerning another, (2) the false statement was published, (3) the plaintiff was injured, and (4) the defendant acted with the required degree of fault.' " *Id.*, quoting *Gilson* at ¶ 37, citing *Spingola v. Stonewall Columbus, Inc.*, 10th Dist. No. 06AP-403, 2007-Ohio-381, ¶ 8.

{¶ 51} " 'Actionable defamation falls into one of two categories: defamation per se or defamation per quod.' " *McClure* at ¶ 11, quoting *Gilson* at ¶ 38, citing *Woods* at ¶ 28. " 'Defamation per se occurs when a statement, on its face, is defamatory.' " *Id.*, quoting *Gilson* at ¶ 38, citing *Woods* at ¶ 29. "Under Ohio common law, in order to be actionable per se, the alleged defamatory statement must fit into one of four classes: (1) the words import a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the words impute some offensive or contagious disease calculated to deprive a person of society; (3) the words tend to injure a person in his trade or occupation; and (4) in cases of libel only, the words tend to subject a person to public hatred, ridicule, or contempt." *Id.*

{¶ 52} "If a statement is defamatory per se, a plaintiff ' "may maintain an action for [defamation] and recover damages, without pleading or providing special damages." ' " *Id.*

at ¶ 12, quoting *Woods* at ¶ 30, quoting *Becker v. Toulmin*, 165 Ohio St. 549, 553 (1956). "However, when defamation is per se, '[p]roof of the defamation itself establishe[s] the existence of some damages.' " *Id.*, quoting *Gosden v. Louis*, 116 Ohio App.3d 195, 208 (9th Dist.1996). "Where a statement is defamatory per quod, a plaintiff must plead and prove special damages." *Id.*, citing *Woods* at ¶ 30, citing *Becker* at 557. " ' "Special damages are those direct financial losses resulting from the plaintiff's impaired reputation." ' " *Id.*, quoting *Peters v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-1048, 2015-Ohio-2668, ¶ 7, quoting *Hampton v. Dispatch Printing Co.*, 10th Dist. No. 87AP-1084 (Sept. 13, 1988).

{¶ 53} In their amended complaint, appellants asserted two separate defamation claims: one for slander and one for libel. The slander claim is based upon alleged oral statements made by Parini and Hawks purportedly disparaging Mr. Rhoads. However, the amended complaint does not include factual allegations as to the content of the alleged oral statements, when the alleged oral statements were made, or to whom the alleged oral statements were made. In their brief, appellants suggest that statements by Parini and Hawks describing Mr. Rhoads as a "bully," a "misogynist" and "masochistic" "are all terms that a trier of fact would likely find Mr. Rhoads to be subject to public hatred and ridicule" and "can (and likely will) be determined by a trier of fact to * * * cause[] injury to the Appellants within their trade or occupation." (Appellants' Brief at 19.) However, the terms "bully" and "masochistic" only appear in written text messages exchanged between Parini and Hawks.[6] These written statements do not constitute slander, which, as noted above, refers to spoken defamatory words. *McClure* at ¶ 10. In short, appellants' unsupported legal conclusions, without supporting factual allegations, are insufficient to withstand a Civ.R. 12(C) motion. *Adena* at ¶ 17. Accordingly, the trial court properly granted appellees' motion for judgment on the pleadings as to appellants' claim for slander.

{¶ 54} Appellants' libel claim is based upon alleged defamatory statements about Mr. Rhoads purportedly sent by Parini via text messages to the Market Manager of the Clintonville Farmers' Market. Appellants alleged these disparaging statements caused appellants to be excluded from participation in the 2022 Clintonville Farmers' Market. In support of this allegation, appellants referenced exhibit H to their amended complaint.

---

[6] The term "misogynist" does not appear in the amended complaint, either through allegation or attached exhibit.

Review of exhibit H reveals that the text messages containing the alleged defamatory statements were sent on May 16, 2020. "It is settled that '[a] cause of action for defamation accrues on the date of publication of the alleged defamatory matter." *Stubbs v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-484, 2012-Ohio-1374, ¶ 16, quoting *Pankey v. Ohio Adult Parole Auth.*, 10th Dist. No. 11AP-36, 2011-Ohio-4209, ¶ 9, citing *Fleming v. Ohio Atty. Gen.*, 10th Dist. No. 02AP-240, 2002-Ohio-7352, ¶ 13; *see also Singh v. ABA Publishing*, 10th Dist. No. 02AP-1125, 2003-Ohio-2314, ¶ 22 ("Ohio has held that the statute of limitations for defamation, be it libel or slander, begins to run at the time words are written or spoken."). Thus, appellants' cause of action for libel accrued on May 16, 2020, the date the text messages containing the alleged defamatory statements were published.

{¶ 55} R.C. 2305.11(A) requires an action for defamation to be commenced within one year of the time the cause of action accrued. *Stubbs* at ¶ 15; *Singh* at ¶ 22. Appellants filed their original complaint on April 6, 2022, outside the one-year statute of limitations set forth in R.C. 2305.11(A). Seemingly acknowledging the statute of limitations bar, appellants reiterate the argument they raised in opposition to appellees' motion for judgment on the pleadings, i.e., that "whether a * * * defamation claim[] is governed by a statute of limitations is a matter to be determined at trial or by summary judgment, after completion of full discovery." (Appellants' Brief at 19-20.) Contrary to appellants' unsupported argument, when a defendant moves for judgment on the pleadings based on the applicable statute of limitations, a court should dismiss the cause of action on that basis if the complaint conclusively demonstrates on its face that the cause of action is barred by the statute of limitations. *Welther v. Plageman*, 10th Dist. No. 19AP-774, 2021-Ohio-713, ¶ 7. Here, appellees moved for judgment on the pleadings on appellants' libel claim based on the one-year statute of limitations set forth in R.C. 2305.11, and the amended complaint, through attached exhibit H, conclusively establishes on its face that appellants' cause of action for libel is barred by R.C. 2305.11. Accordingly, the trial court properly granted appellees' motion for judgment on the pleadings on appellants' libel claim.

{¶ 56} Appellants' final argument under their first assignment of error asserts the trial court improperly granted appellees' motion for judgment on the pleadings on their

claims against Parini and Hawks for tortious interference with contract and civil conspiracy.

**{¶ 57}** "A party is liable for tortious interference with contract if the party intentionally and improperly interferes with the performance of a contract between another and a third person by inducing the third person not to perform the contract, thus causing damage." *Innovative Architectural Planners, Inc. v. Ohio Dept. of Adm. Servs.*, 10th Dist. No. 23AP-116, 2024-Ohio-824, ¶ 21, citing *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176 (1999). "To establish a claim for tortious interference with contract, a plaintiff must prove: (1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Id.*, citing *Fred Siegel*, paragraph one of the syllabus.

**{¶ 58}** Appellants' claim for tortious interference against Parini and Hawks is based on their alleged interference with the contract for the 2022 WFM season. As we have already concluded, appellants have failed to establish the existence of a contract for the 2022 season. Without a contract, the first element of the tortious interference claim fails. *Ettayem v. Ramsey*, 10th Dist. No. 17AP-155, 2019-Ohio-675, ¶ 22 (without a contract in evidence, the first element of plaintiff's tortious interference with contract claim has not been demonstrated). Thus, the trial court properly granted appellees' motion for judgment on the pleadings as to appellants' tortious interference with contract claim.

**{¶ 59}** "The tort of civil conspiracy is a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Adams v. Margarum*, 10th Dist. No. 16AP-515, 2017-Ohio-2741, ¶ 20, citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998). " 'A civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy.' " *Id.* at ¶ 21, quoting *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 40 (10th Dist.); *Walter v. ADT Security Sys., Inc.*, 10th Dist. No. 06AP-115, 2007-Ohio-3324, ¶ 36 ("[a] civil action for civil conspiracy requires a viable claim distinct from the conspiracy in order for the conspiracy claim to survive"). Here, appellants' civil conspiracy claim is based on tortious interference with contract. Having concluded the amended complaint fails to assert such a claim, there

can be no civil conspiracy. Thus, the trial court properly granted appellees' motion for judgment on the pleadings on appellants' civil conspiracy claim.

{¶ 60} Having determined the trial court properly granted appellees' motion for judgment on the pleadings, we overrule appellants' first assignment of error.

{¶ 61} In the second assignment of error, appellants assert the trial court improperly determined the 2020 and 2021 contracts are integrated writings. Appellants maintain the 2020 and 2021 contracts do not contain integration provisions. According to appellants, "when the Contracts at issue do not contain an integration provision, and evidence outside the terms of the Contracts (parol, extrinsic, or otherwise) can and must be considered, it is simply not appropriate for a Court to grant judgment on the pleadings." (Appellants' Brief at 24.)

{¶ 62} Whether a contract is integrated is not dependent upon the existence of an integration clause to that effect. *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, ¶ 11. Courts presume a contract is fully integrated when it "appears to be a complete and unambiguous statement of the parties' contractual intent." *Id.*, citing *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000). Appellants must overcome the presumption that the contracts are integrated writings. *See Kertes Ents., L.L.C. v. Sanders*, 8th Dist. No. 109584, 2021-Ohio-4308, ¶ 14.

{¶ 63} Appellants maintain the contracts are not fully integrated, thus requiring consideration of extrinsic evidence, because the contractual language is ambiguous. However, as noted by the trial court, appellants' amended complaint contains no assertion that the contractual language in either the contracts or the Regulations is ambiguous.

{¶ 64} Appellants further argue the trial court "did not properly analyze or apply the standards for the integration of a contract and/or the parol evidence rule in respect of these matters." (Appellants' Brief at 25-26.) Appellants base this argument on the unsupported assertion that the trial court went beyond the face of the pleadings in determining whether the contracts were integrated. Appellants argument suggests the trial court was limited to the allegations in the pleadings in determining the integration issue. To the contrary, and as we have previously stated, the trial court must look not only to the allegations in the amended complaint, but to the language of the contracts attached to the amended complaint. The trial court's decision includes no indication that it looked outside the

pleadings and the attachments thereto in concluding that the contracts were fully integrated. Following *Bellman*, the trial court found the contracts were fully integrated because the contractual language contained therein was not ambiguous. In so finding, the trial court analyzed the language in each applicable provision of the written contracts. The court also noted that appellants' "failure to point to any specific provision of the contract as ambiguous is fatal to their integration argument." (Decision & Entry on Def.s' Mot. for Jgmt. on Pleadings at 5.)

{¶ 65} Review of the contractual language contained in the contracts and the Regulations reveals no ambiguity. As noted above, the provisions included in these writings clearly set forth that: (1) vendor admission to the WFM is discretionary, (2) admission to the WFM is not guaranteed, and (3) admission to the WFM does not exceed one growing season. These provisions are not susceptible to more than one reasonable interpretation. The contracts are fully integrated, and the trial court did not err in concluding as such.

{¶ 66} Appellants' second assignment of error is overruled.

## IV. Conclusion

{¶ 67} Having overruled appellants' two assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS and LELAND, JJ., concur.

_____